## George W. Sartor et al. *v.* Harriet N. Sartor.

1. Probate court : practice : petition to contest will.—A petition seeking to annul an instrument probated as a will and to set aside the probate thereof, upon the ground that it appears on its face to be a deed and not a will, raises a purely legal question, to be determined by the court, and it ought not therefore to ask for an issue *devisavit vel non*, to be submitted to a jury. See *Hamberline* v. *Terry*, 7 How. 148; *Cowden* v. *Dobyns*, 5 S. & M. 82; *Garner* v. *Langford*, 12 Id. 560; *Wall* v. *Wall*, 30 Miss. R. 91.

2. Will : whether an instrument is a deed or will dependent on character of its provisions.—The true character of an instrument, as to whether it be a will or a disposition of property *inter vivos*, is to be determined from its provisions, whatever may be its form ; and hence, if an instrument be in form a deed, yet, if it appears on its face that it is to have no effect until after the death of the maker, it will be construed to be a will. See *Wall* v. *Wall*, 30 Miss. R. 91.

3. Same : same : case in judgment.—An instrument which was in form a deed contained this clause : "For the love and affection I have for my wife Harriet N. Sartor, I give unto her all my property, real and personal, during her widowhood ; and if she marries it is all to go back to my niece Sally ;" and there was nothing else in the instrument which showed unequivocally whether the maker intended it to take effect before or after his death :—*Held*, that it was doubtful, from the expression "I give * * * during widowhood," whether the maker intended to give an interest *in presenti*, or only after his death, but that upon consideration that he gave all of his estate, it was highly improbable that he intended the gift to take effect before his death, and it was therefore held to be a will.

Appeal from the Court of Probates of Monroe county.   Hon. W. A. Tucker, judge.

This was a petition filed by the brothers and sisters, who are the heirs at law, of James T. Sartor, for the purpose of annulling and setting aside the probate of a certain instrument which had been theretofore admitted to probate as the will of said Sartor.

The petition, after setting out the heirship of petitioner, alleges that, at the May term, A. D. 1859, of the court, a writing made by the said James T. Sartor, by which "for the love and affection," &c., he gave to his wife, Harriet N. Sartor, all of his property, &c., had been admitted to probate.   That the said in-

strument so admitted to probate as a will is not the will of the said James T. Sartor, because it does not on its face purport, nor was it shown *de hors* the record, to be the last will and testament of said James T. Sartor; because said writing on its face does not show that it is wholly to be performed after the decease of the pretended maker thereof; because it does not show that it is not to operate until after the decease of the maker; because said instrument is too vague, uncertain, and doubtful as to the time when the obvious purposes thereof are to take place; because said instrument is not a testamentary paper in form or substance; and because it does not show on its face that the maker thereof intended it to operate as a will, or that he had at the time of making the same the *animus testandi* necessary to make it a will.

The prayer was for a decree that the instrument be declared null and void as a will, and that it be rejected and refused probate as a will.

The petition made the instrument an exhibit, and it is in the following words and figures:

" STATE OF MISSISSIPPI, MONROE COUNTY:

"For the love and affection that I have for my wife, Harriet N. Sartor, I give unto her all my property, real and personal, during her widowhood; and if she marries it is all to go back to my niece, Sally Sartor, and she is to pay Coleman, my brother's children—namely, Elizabeth, Selina, Daniel, and Medora —one thousand dollars apiece, commencing to pay one year from the time she receives the property, Elizabeth hers first, and Selina next, and so on until she pays all four of them, which will be twelve months apart from the first, second, and so on.

"My property consists of three hundred and twenty acres of land and twelve negroes, [here he names them,] three mules, one horse, cows, hogs, and some seventeen hundred dollars' worth of notes on different persons.

"Given under my hand and seal, this April 4th, 1857.

"JAMES T. SARTOR. [SEAL.]"

The widow, Harriet N. Sartor, demurred to the petition, alleging several grounds.

The demurrer was sustained, and the petition dismissed, and thereupon petitioners appealed.

*Sadler* and *Perry*, with whom was *George L. Potter*, for appellants.

The instrument upon its face is a deed; it has every form and feature of a deed; and, if the intention is to be gathered from the face of the instrument itself, I respectfully submit that nothing else can be the decision of the court. It purports to be founded on "love and affection," showing the consideration. It passes a present interest, as is shown by the word, "I give," uncoupled with words of *devise* or any other word showing that the gift was postponed until after the death of the maker. It is further shown from the fact that it gives the property which he *then possessed*, even to the debts due to him, and all this without a *single testamentary word being used*—not one word, as we contend, postponing the operation of the instrument to the death of the maker.

Then let the court first determine that the instrument is not a will from the face of it, under the following authorities:

1. Jarman on Wills, page 21, holds this language : "But it should seem that if the instrument is not testamentary *in form or in substance*, (none of the gifts in it being *expressed in testamentary language*, or being in terms postponed to the death of the maker,) and if no collateral evidence is adduced to show that it was intended as a will, probate will not be granted of it as a testamentary document."

" The instrument cannot be regarded as a will, for the reason that it was not designed as such." *Edward et al.* v. *Smith*, 35 Miss. R. 200 ; *Ingraham* v. *Porter*, 4 McC. 198 ; 13 Ala. R. 731 ; 19 Id. 59 ; 24 Id. 122.

" The character of an instrument is to be determined by the provisions it contains." *Harrington* v. *Harrington*, 2 How. 720.

Under these rules, taken in connection with the decision of *Wall* v. *Wall*, 30 Miss. R. 91, we respectfully submit that the

instrument in this case is *not a will but a deed*, and should not have been admitted to record as a will.

Again, we contend that, if it be determined that it may, from the provisions in it, be admitted to probate as a will, yet it lacks one essential requisite of a will, to wit, *publication*. The instrument on its face shows that it is given under the hand and seal of the maker. We respectfully submit that this is not a sufficient publication to entitle it to probate as the will of James T. Sartor, duly *made, signed, and published*. Even if it were proved, which we do not admit, that the instrument under controversy was wholly written in the handwriting of the maker, dated, signed, and sealed by him, we respectfully submit that it would not amount to a sufficient publication to admit it to probate as his last will and testament. If the instrument on its face declared the intention of the maker to be testamentary, and then he *signed, sealed, and delivered* the instrument, it would answer; but the instrument before the court on its face bears no such evidence. Hence we contend that on this ground it should not have been admitted to record.

Again, the petition alleges that the instrument "does not on its face purport, nor was it shown *de hors* the record, to be the last will and testament of said Sartor." This refers to the proof of the instrument in every thing that required extrinsic evidence. It does not appear on its face that the maker wrote it himself in his own handwrite. He gave it "under his hand and seal," but, so far as is known, it may have been written in the hand of an entire stranger. This then evidently requires an answer. Indeed it seems to us so obvious that the demurrer should have been overruled, that we hardly deem it necessary to add more to this brief.

*Irwin* and *Love*, for appellees.

There is nothing requires so little solemnity as the making of a will of personal estate, &c., for there is scarcely any writing which the courts will not admit as such. Indeed it may be said the form of a paper does not affect its title to probate, provided it is the intention of the deceased that it should operate after his death. A deed poll, an indenture, a deed of gift, a bond, mar-

riage settlement, letters, drafts, assignments of a bond, receipts, indorsements on notes, have been held to be testamentary. - .1 Williams on Exors. 85, and the numerous authorities there cited. 1 Lomax on Exors. 17–20, and authorities there cited.

"It is not necessary for the validity of a testamentary instrument, that the testator should intend to perform or be aware that he had performed a testamentary act; for it is settled law that if the paper contains a disposition of the property to be made after death, though such paper were not intended to be a will or other testamentary instrument, but an instrument of a different shape, yet, if it cannot operate in the latter, it may nevertheless operate in the former character." 1 Williams on Exors. 55.

Tested by the rules and principles here laid down and cited, we think that there can be no doubt but that the paper under discussion will be held to be of a testamentary character. The testator says "*I give*," the usual language employed *in wills*, while the usual language in deeds is "*grant, bargain, sell*," &c.

Again, the deceased gives to his *wife during her widowhood*. She could only be a widow in the event of his death, and this renders it certain that the instrument was made in contemplation of the death of the maker. We have never yet met with an instance in which a husband by deed made a settlement on his wife *during her widowhood*, though such settlements are frequently made by will. Then, again, the maker of the instrument gives all of his property, real and personal, his land, negroes, stock, *choses in action*, every thing he possesses. Are such dispositions usually made by deed, when the donor had yet prospect for and looked for a long life? Such a course would not only be unreasonable, but it is against the ordinary principles of human nature. We submit, then, that the instrument in all of its features bears evidence of the testamentary disposition of the maker, and that the courts of the country will not permit the prime intention to be defeated merely because the maker was not a skilful draftsman.

In 10 S. & M. 620, et seq., a letter written by a soldier in Mexico—in which the following language was used: "If I never come back, ma promised my property should go to Martha Yar-

borough"—the court held to be a good will, and admitted the same to probate as a testamentary disposition of property.

In 9 Gill & Johns. (Md.) R. 98, the following paper, to wit—"This will certify that I do assign and give all my property unto George Wareham," (mentioning the property given)—was held by the Supreme Court to be a will.

In 10 Ga. R. 506—*Symes* v. *Arnold*—the court held a paper, entirely in the form of a deed, but in which the testatrix reserved to herself the use of all the property during her natural life and then to go to the legatees, to be a will and not a deed. The court in this case reversed the decree of the inferior court, which had held the instrument to be a deed. *Robinson* v. *Schly*, 6 Ga. R. 515.

In *Hester* v. *Young*, 2 Ga. R. (by Kelly) 32, the following instrument, to wit—"Know all men, that I, William Womack, in consideration of love and affection for my son, Frederick Womack, I do give unto him the following property: three hundred acres of land I now live on, two negroes, two horses, &c., together with my household furniture, after my death and the death of my wife, to have and to hold said property forever"—was held to be a will; and on the trial of the cause the court refused to permit it to be read as evidence, as it was a will which never had been probated.

In *Wheeler et al.* v. *Durant et al.*, 3 Rich. Eq. R. 452, an instrument, having many of the peculiarities of a deed and which, by the instrument itself, was termed a deed, was held by a majority of the court to be a will and not a deed.

See *Ragsdale* v. *Booker*, 2 Strobh. Eq. R. 348; *McGloun* v. *McGloun*, 17 Ga. R. 234; *Boyd* v. *Boyd*, 6 Gill & Johns. 25; *Hunt* v. *Hunt*, 4 N. H. R. 434; *McLean* v. *McLean*, 6 Humph. 452; 2 Ala. R. 153; 24 Id. 127.

*Sale* and *Phelan*, on same side.

We will ask attention only to the first ground of demurrer taken to the petition, viz.: "That it appears from the face of the writing itself, as set out in the petition, that the same is and was the last will and testament of the decedent, and was so intended by him."

The question is, whether the writing was *intended* by its author as a *will* or *deed;* and if the former, then whether the necessary constituents of a will are present, to effectuate such intention.

If intended as a will, and it is in its nature ambulatory or revocable during his life, and its entire operation postponed until at or after his death, it is in law a will, whatever be its form, and although called a deed. 1 Jarman on Wills, 12–20, and notes; *Wall et al.* v. *Wall,* 30 Miss. R. 96; *Edwards et al.* v. *Smith,* 35 Id. 197. We will construe the writing by these rules.

1. In the beginning the author says: "For the love and affection I bear my wife, Harriet N. Sartor, I give unto her *all* my property," &c. These words are relied on by the appellants to show that it is a deed of gift, reciting the consideration of love and affection; yet it is notorious that the same are often employed in instruments confessedly wills, and have never been held to alter their character. No other meaning can be given to the words, "love and affection," in the connection in which they are here used, than as reciting the sentiments which induce the bequest to the particular individual. They are often employed in making testamentary provision for a faithful servant; or in giving a legacy to a friend who is stranger to the blood. They are not legally necessary to support either a will, or a gift *inter vivos;* both of which are purely voluntary, and especially the latter. And so the word " give," used in the present tense, as a term of conveyance, is as operative in a will as the words " devise and bequeath," with which indeed it is often employed. All of them are always used in the present tense only in a will, and never in any other.

2. But as to the time of its actual and intended operation, the question is as easily and at once settled by the fact that the gift of all his property to the wife is expressed to be "during her widowhood."

If "*nemo est hæres viventis,*" we may make for this case a maxim equally axiomatic, and say also *nemo est vidua viventis.* The words of the instrument plainly manifest the entire period for which the estate is to be enjoyed during her widowhood. It begins with her widowhood, and, by a further clause of the same paragraph, it ends with her subsequent marriage.

The appellants may, however, contend (as was insisted in the Probate Court) that these words, " during her widowhood," in-dicate only the point at which her interest terminates. We cannot discern either the force or appropriateness of the con-struction. He says, " I *give* to her, during her widowhood :" *i. e.,* for and during the time in which she may be my widow. Words cannot be plainer. The term " during" extends over the entire period to which it may be applied—from its beginning to its end. The wife was not yet his widow. Suppose a bequest to A. B., (an unmarried man,) " during his coverture with my daughter C. D.," (a feme sole.) Could A. B. claim the estate before any such coverture commenced? Or suppose that one year after testator's death, A. B. should actually marry C. D. Would his title relate back and commence at testator's death, or take its origin at his own coverture? And more than all that: could it be imagined that his interest under the will commenced at testator's death, and that the words, " during his coverture," &c., were only in-tended to signify the point at which that interest should cease?

But, in order to silence all cavil as to this attempted construc-tion, we have only to look a little further, to the language which the author does employ, to expressly and unmistakably indicate the point at which her interest is to terminate, viz., " if she *mar-ries.*" That act and that alone was intended to determine her estate. Should her widowhood's duration cease by her death, her estate would be enlarged into a fee simple, and the limitation over to his nephews and nieces fail; but should her widowhood be ended by her marriage, he plainly intended that then her interest also should determine, and be cut down to a particular estate for years only.

Yet, if the anticipated position of the appellants be correct, and " during her widowhood" refer only to when the estate shall end, the termination of her widowhood by death would prevent the estate from either descending to her heirs or reverting to his, and allow the limitation over to attach, in the face of the fact of its having been expressly made to hinge upon the event indicated by the words, " if she marry."

If we are right in our interpretation, then the instrument under consideration is postponed as to its entire operation until

the death of the author, and widowhood of his wife ; and becomes thereby a will, provided that such postponed operation were *intended* by him. Whether he did so intend it depends upon whether he is to be allowed to have understood the meaning of the word "widowhood," and when such a state naturally commences. That he did well understand and provide for both the modes by which it might cease, cannot be doubted.

3. Our view that the paper was intended by its author as a testamentary disposition of his property is made conclusive by the fact that he thereby disposed of all his worldly estate—first under the sweeping designation of "all my property, real and personal," in the beginning; and afterwards, at the close, by reciting his effects, item by item, including even the promissory notes due to him.

While it is possible for a sane man (yet scarcely possible even) to thus by deed in life reduce himself to voluntary beggary, yet such intention, to meet the approbation of judicial construction, must be in terms made manifest. It cannot be presumed. Still less can it be presumed that he would thus voluntarily impoverish himself to enrich nephews and nieces, (the children of living brothers,) having no natural claims upon him for nurture and maintenance ; and coolly and deliberately make distribution and apportionment among them, by instalments through successive years. It looks too much like a last will and testament.

For these reasons, we respectfully submit that the judgment of the Probate Court should be affirmed.

On the first argument of this cause, at the October term, 1860, this court affirmed the decree of the Probate Court, upon the ground that the petition did not ask for an issue *devisavit vel non* to be tried by a jury. A reargument was granted, and at the October term, 1861, the following opinion was delivered on the reargument of the cause:

SMITH, C. J., delivered the opinion of the court:

The appellants filed their petition in the Court of Probates of Monroe county, to vacate the probate of a certain instrument proved and admitted to record in said court as the last will and

testament of James T. Sartor, deceased, and to have the same declared null and ineffectual as the will of the said decedent.

The petition alleges that the instrument in question is not a will, because, as it is averred, it does not, upon its face, purport to be a will, nor was it shown *de hors* the record to be the last will and testament of the deceased; because it does not show, upon its face, that the alleged testator intended it to operate as a will; because it is not a testamentary paper either in form or substance; and for other reasons appearing from the face of the instrument. The petition contains no allegation of any fact which could, legitimately, constitute the subject of inquiry by a jury, upon an issue to try the question whether the instrument was the last will and testament of the testator or not.

The respondent demurred to the petition, and assigned various causes of demurrer, which it is not material, at least at this stage of the investigation, to notice. The demurrer was sustained, and a decree entered dismissing the petition; from which this appeal is prosecuted.

It appears evident, from the allegations and prayer of the petition, that the appellants did not seek to have the question, whether the instrument was or was not the last will and testament of the deceased, determined by a jury, upon an issue made up for that purpose; but to have the instrument in question declared null and void as the last will and testament of the alleged testator, and to vacate and set aside the probate of the same, upon the sole ground that the said writing was not a testamentary paper, but a deed, which fact appeared from the face of the paper itself.

When a will is probated in common form, any person interested, within two years thereafter, has the right to contest the validity of such will, by petition or bill filed in the court in which probate was had. When such a proceeding is instituted, the statute directs that "an issue shall be made up and tried as other issues, to determine whether the writing produced be the last will and testament of the testator or not; and the verdict of the jury shall be final between the parties to the issue, saving the right to grant new trials as in other cases." Code, 434, Art. 43.

According to the settled doctrine of this court, the probate of a will in common form is not conclusive as to the rights of any party interested in the estate of the testator. A probate of that character is regarded only as "an incipient step to be taken, in order to give the court jurisdiction of the matter;" and hence may be vacated and set aside by the parties interested, upon a showing "of sufficient legal grounds." And it is also settled that, in the proceeding authorized by the statute, a party desirous of contesting the validity of a will, of which probate in common form has been granted, is not, as the terms of the statute literally construed would seem to indicate, limited to matters *de hors* the alleged will, and which would constitute the subject of an issue, which could, legitimately, be tried by a jury, but may assail the validity of the will and its probate upon legal grounds appearing upon the face of the instrument itself; for example, that the instrument propounded and admitted to probate as a will is not a will, but a deed or instrument of another character. *Hamberlin* v. *Terry*, 7 How. 148 ; *Cowden* v. *Dobyns*, 5 S. & M. 82; *Gower* v. *Langford*, 12 Id. 560 ; *Wall* v. *Wall*; 30 Miss. R. 91.

It follows, therefore, that no valid objection can be raised to the petition upon the ground that the petitioners do not ask for an issue to be made up in order to determine the question whether the instrument in question was the will of the testator or not, but seek a determination of the legal question alone— that is, whether the instrument in question was a testamentary writing or a deed, and which it is manifest could only be decided by the court and not by a jury.

It seems to be certain that the proceeding authorized by the statute above quoted was not designed as a review of the act of the court in admitting the alleged will to probate, but as an independent proceeding in the nature of a trial *de novo*, in which the validity of the will is to be determined upon the facts established or admitted by the pleading or proved by the evidence adduced on the trial. Hence the previous action of the judge of probates in granting probate of the will is not to be looked to as either argument or evidence in regard to any question involved in the subsequent proceeding under the statute to set aside and

vacate the probate. We are therefore confined, exclusively, to an examination of the writing in question, and are compelled to determine the question whether it is a will or not from its form and the nature of its provisions.

In deciding this question—that is, whether the instrument is a will or a deed—the first observation to be made is, that the writing is unquestionably in form a deed. It states a consideration, and purports to be signed and sealed by the maker.

But it is well settled that whatever may be the form of the instrument, its true character—that is, whether it is a will or a deed—must be determined by the nature of its provisions, which it is true may sometimes be characterized by the attendant and concurrent circumstances of its execution. It is, hence, immaterial whether the maker calls it a deed or a will; for if, upon the whole, the intention was that the instrument should not take effect immediately, but should only have a future operation, to commence after the death of the maker, it will be a will. *Wall* v. *Wall*, 30 Miss. R. 91, and cases cited.

The first clause of the instrument is in these words: "For the love and affection I have for Harriet N. Sartor I give unto her all of my property, real and personal, *during her widowhood;* and if she marries it is all to go back to my niece, Sally Sartor; and she is to pay Coleman, my brother's children—namely, Elizabeth, Selina, Daniel, and Medora,—one thousand dollars apiece, commencing to pay one year from the time she receives the property; Elizabeth hers first, and Selina next, and so on until she pays all four of them, which will be twelve months apart from the first, second, and so on."

The second clause contains a statement of the deceased's property, which is represented to consist of three hundred and twenty acres of land, twelve negroes, three mules, one horse, cows, hogs, "and some seventeen hundred dollars worth of notes on different persons." Nothing is said in relation to the increase of the slaves or of the stock, and no direction is given as to any part of the property except what is contained in the first clause of the instrument. It is signed and sealed, but unattested, and concludes in these words, "given under my hand and seal."

As above remarked, the instrument is in form a deed, and

there is no word or phrase peculiar to acts of a testamentary character which unequivocally shows that the deceased, in executing the instrument, supposed that he was making his will. But it is contended in defence of the decree that, upon a proper construction of the paper, no present interest was vested in Mrs. Sartor; but that the estate which was given to her vested and could only vest when she became a widow. If this position be correct, it is certain that the maker of the instrument intended that it should only operate after his death, as the widowhood of the devisee could not occur until the testator died. This construction of the instrument would very satisfactorily show it to be a will, not a deed, as contended for by the appellants.

But the terms of the instrument render it extremely uncertain whether the maker did not design to vest the property immediately in Mrs. Sartor, but to postpone the enjoyment until after his death. This is unquestionably the natural import of the language used. The maker of the instrument says: " For the love and affection I have for my wife, Harriet N. Sartor, I give unto her all of my propery, real and personal, *during her widowhood*," &c. If, however, we adopt this construction, and of consequence determine the writing to be a deed and not a will, the effect of the instrument, if valid for that purpose, is to strip the grantor of his entire estate, real and personal. And for that reason, if for no other, it is highly improbable that the maker intended the instrument to have that effect.

And looking at the whole instrument, we are of opinion that it should be regarded as a will and not a deed; and therefore order the decree to be affirmed.