## JOHN K. YOUNG ET AL. *v.* MARY E. WARK ET AL.

1. RES ADJUDICATA. *Probate of will. Caveat.*

    The filing and withdrawing of a caveat against the confirmation of
    an order by the clerk admitting a paper to probate in common
    form as a will, and the subsequent confirmation of the order, will
    not support a plea of *res adjudicata* upon an issue as to whether
    the paper be testamentary.

2. WILLS. *Absence of evidence that paper was intended to be.*

    A paper which does not purport on its face to be a will, and does not
    contain a dispositive word, in the absence of evidence that it was
    intended to be testamentary, is not a will.

3. SAME. *Case.*

    The words, "Want Sarah relatives have all property," written and
    signed by a decedent, without date, is not, in the absence of evi-
    dence that it was intended to be testamentary, a will.

FROM the chancery court of Monroe county.

HON. BAXTER MCFARLAND, Chancellor.

The appellees, Mary E. Wark *et al.*, were the complainants
in the court below. The appellants, Young *et al.*, were de-
fendants there. The facts are fully stated in the opinion of
the court.

*Clifton & Eckford*, for appellants.

The plea of *res judicata* is a complete bar to the main-
tenance of the bill by Mary E. Wark and William Sadler.
Both of these complainants appeared by counsel when the
will was presented for proof and probate, and presented the
same objection to the probate of the will that is now urged in
the bill against its validity. These issues were presented by a
motion which was regularly set for hearing, and which con-
tained the same legal question and issues embraced and set out

in the original bill. It was a mode of procedure which the complainant had a right to adopt and invoke, and which required the judgment of the court on the issues therein presented, the same as if set out in an original bill. *Wall* v. *Wall*, 30 Miss., 95, 96; *Sartor* v. *Sartor*, 39 Miss., 769; code of 1892, §§ 474, 1815.

In accordance with the statutes the caveat was filed, and the caveat in the form of this motion suspended the order or decree of the clerk probating said will. Code, §§ 473, 474, and 1815 Under this caveat the complainants could raise any question of law or facts that would defeat the will. Mary E. Wark and William Sadler by their own action made themselves parties to the application to probate the will. And the procedure invoked constituted them actors or complainants. They attacked the validity of the will, in fact and in law. They assign their objection to the probate of the will both in law and in fact, and ordered their objections to be set down for final hearing. As to the legal objection, the case was ready for hearing, and even under the rules of equity pleading they could not dismiss their case or withdraw from the contest of their own choosing. See order for hearing. *Phillips* v. *Wormley*, 58 Miss., 398. But as probate proceedings, it was both *in rem* and *in personam*, and under our statute their withdrawal of objections and the failure to ask for an issue *devisavit vel non* to be made up is as to them *res adjudicata*. Annotated code 1892, § 1884; 6 Am. & Eng. Enc. L., 867; *Roberts* v. *Trawick*, 13 Ala., 82; *Hudson* v. *Sawyer*, 10 S. E. Rep. (N. C.), 85; *McMahon* v. *McMahon*, 13 S. W. Rep., 203.

The question, whether the paper offered for probate is testamentary in its character or an instrument of another character, is a question of law for the court to decide from an inspection of the paper ordinarily. The power of a court to withhold the paper from the jury is confined alone to this inquiry, and the further question, whether the formalities required in the execution of a will had been observed. If in this case the paper

be testamentary in its character—that is, if from the paper the intention of the grantor be clear, that no interests or rights pass until after his death, the court must make up the issue *devisavit vel non.* *Sartor* v. *Sartor,* 39 Miss., 770; *Wall* v. *Wall,* 30 Miss., 96; *Harrington* v. *Harrington,* 2 How., 720. Or, if such intention, though uncertain from an inspection of the paper, is capable of being made certain by parol proof of the concurrent circumstances of its execution, the issue must go to the jury. *Wall* v. *Wall,* 30 Miss., 96; *Schlottman* v. *Hoffman,* 18 South. Rep., 893; Wigram on Wills, 142 and 154 pl. 79, 156 pl. 83–88; Schouler on Wills, 556, 579.

"Want Sarah relatives have all property:" these same words, in effect, have been construed in the cases cited below, all of which are leading cases, to be testamentary because it takes effect and conveys the property in future, and conveys nothing *in presenti* for want of delivery. If this be true, then proof of handwriting establishes this paper to be a will on its face.

"Want Sarah relatives have all property:" these words are both testamentary and imperative, and have been so construed by our own court in *Garner* v. *Lansford,* 12 Smed. & M., 559 and 561. As a gift *in presenti* and *inter vivos* it would be void for want of delivery; as a will the property would pass to Sarah's relatives upon the testator's death. *Tozer* v. *Jackson,* 30 Atl. Rep., 401, 402, 713; Schouler on Wills, sec. 262; 1 Jarman on Wills (Perkins' Notes), *19; *Cocke* v. *Cook,* 1 Prob. & Div., 241; *Mitchell* v. *Donohue,* 38 Am. St. Rep., 279.

But there is an uncertainty under the instrument as to who the beneficiaries are, and it is both competent and necessary to prove by parol evidence, viz: (*a*) Who Sarah was. (*b*) Who Sarah's relatives were. Wigram on Wills, p. 142, prop. 5; 2 Jarman on Wills, 33, 37; 4 Kent (5th edition), note C, 605; Schouler on Wills, sec. 537 and note; 20 Am. & Eng. Enc. Law, 728; *Smith* v. *Smith,* 4 Paige, 271; *Love* v. *Buchanan,* 40 Miss., 758.

There is no ambiguity in the description of the property conveyed by the will. 2 Kent, *535, and notes; 2 Jarman on Wills, 139; Schouler on Wills, sec. 510.

The remaining question is, whether the formalities required in the execution of wills had been observed. This instrument being holographic, proof that the testator was twenty-one years old and that he wholly wrote and signed the will himself, meets the requirements of the statute as to formalities. Annotated code 1892, § 4488. At common law a will was not required to be dated, and the date, when affixed, was no part of the will. 1 Jarmon on Wills, 122, note 1; Schouler on Wills, sec. 16; *Hunt* v. *Hunt*, 17 Am. Dec., 438; 4 Kent Com. (2d ed.), sec., 520.

The local statutes of the place where the lands are located control, and, as already shown, our statute does not require that a will shall be dated. Schouler on Wills, secs. 264, 285, 261 and note; *Id.*, sec. 9, citing 4 Kent (8th ed.), *520; *Wilbourn* v. *Shell*, 59 Miss., 205; *Heffner* v. *Heffner*, 23 So. Rep., 281; *Davis* v. *Williams*, 57 Miss., 847.

Nor is there any law or statute requiring the will to be kept in any particular place. This will was found on the mantle in the room where the testator died, and on the day of the funeral, immediately upon return from the cemetery, by one of the beneficiaries, while gathering up the testator's private papers, and in the presence of several witnesses. The place where it was found is material only on the issue of testamentary intent. This will being holographic, proof that it is wholly in the handwriting of S. A. M. Sadler, is proof that he executed it as a free agent. 29 Am. & Eng. Enc. Law, 127b, note 4; *Wilbourne* v. *Shell*, 59 Miss., 205; *Anderson* v. *Pryor*, 10 Smed. & M., 620; *Watson* v. *Pipes*, 32 Miss., 451; *Wilbourne* v. *Shell*, 59 Miss., 205; *Mitchell* v. *Donohue*, 100 Cal., 202; *Crutcher* v. *Crutcher*, 11 Hum. (Tenn.), 377.

*Walker & Tubb*, on the same side.

The issue presented by this appeal is whether or not the paper probated as the will of S. A. M. Sadler is a testamentary instrument.   It is admitted that it was "wholly written and subscribed" by Sadler.   It is established by the evidence that it was found on the mantel in the room where Sadler died, and shortly after his death.   It is also established by the evidence that "Sarah," named in the writing, was the dead wife of Sadler, and that appellants, the proponents of the will, are the nearest of kin to her; also that the entire estate of Sadler was inherited by him from his wife, Sarah.   In this attitude of the case does the writing show testamentary intent in Sadler? Appellees contend that for three reasons the writing cannot be accepted as a holographic will.   (1) It is not dated; (2) it was not found among Sadler's private papers; (3) the writing is too vague and ambiguous.

The construction of testamentary documents is controlled by the law of the domicile of the testator.   Some of the states require by statute that the writing proposed as a holographic will shall be wholly "written, dated, and signed" by the deceased. In those states, when such a requirement is made by statute, their supreme courts have held that writings not conforming to that requirement shall not be construed as wills.   But even then the courts will strain a point and indulge presumptions in order to uphold the testamentary character of the writing, as was done in the case of *Lagrone* v. *Merle*, 52 Am. Dec., 589, by the Louisiana court.   But the laws of Mississippi do not require that the instrument should be "dated."   Ann. code, § 4488.   That a date is not essential where the statutes do not require it, we refer the court to the following authorities: Schouler on Wills, sec. 261; *Wright* v. *Wright*, 5 Ind., 389; 79 Ky., 607; 40 Ark., 144; 1 Jarman on Wills, 110, 122, note 1; *Dinkins* v. *Hollis*, 7 Gill. & Johns., 311; *Tolbee* v. *Williams*, 80 Ky., 661; 1 Jarman on Wills, 342, note 1.

The laws of this state do not require that the writing must

be found among the valuable papers and effects of the deceased, or shall have been lodged in the hands of any person for safe keeping. Some of the states, as, for instance, Tennessee and North Carolina, require that by statute, and the supreme courts of those states decline to uphold writings not meeting such requirement.

When the statute does not make this requirement, as does not the state of Louisiana, "a holographic will found two years after the death of the testator, attached by paste or mucilage to the under side of the tray or till of a common trunk, was admitted" to probate and upheld. *State* v. *Ames*, 23 La. Ann., 69, s. c. 52 Ann. Dec., 593, note.

There is much learning in the books on the sufficiency and insufficiency of words in writings to show a testamentary intent, "and courts, in reading wills, always supply obviously omitted words." The clearest enunciation of the doctrine we have discovered is in the case of *Mitchell* v. *Donohue*, 28 Am. St. Rep., 279, a case clearly in point. In that case the California court took a much more ambiguous and vague writing than the one in this case, interpolated the obviously omitted words and sustained its testamentary character, transposed it from an illiterate jumble of meaningless words into a sufficient holographic will. This is the writing proposed as a will in this case: "Want Sarah relatives have all property. S. A. M. Sadler."

Following the lead of the California court in Donohue's case, *supra*, and inserting only the words "I," "to" and "my," where they were obviously omitted, we have the clear testamentary intent of Sadler: "I want Sarah's relatives to have all my property." It cannot with good reason be urged that this writing, thus read by the court, does not clearly show the necessary *animus testandi* of the decedent. Language almost identical with this was not even assailed for ambiguity in the case of *Garner* v. *Lansford*, 12 Smed. & M., 558. In that case this was the testamentary language: "I want my wife to have

what little property I have." The will in that case, a nun-
cupative will, was not upheld because the statutory require-
ment of proof to establish it was not complied with, and for
that reason alone its probate was set aside. The books furnish
many instances of words supplied to make wills express the
testamentary intent of the decedent. Where the intention of
the testator is incorrectly expressed, the court will carry it
into effect by supplying the proper words. The words of a
will may be transposed in order to effectuate the general intent
of the testator. *Covenhoven* v. *Shuler*, 2 Paige, 122; *Estate
of Wood*, 36 Cal., 75; *Jackson* v. *Hoover*, 26 Ind., 511; *Lynch*
v. *Hill*, 6 Memf., 114; *Dew* v. *Barnes*, 1 Jones Eq., 149;
*Sessoms* v. *Sessoms*, 2 Dev. & B., 453; *Geiger* v. *Geiger*, 4
McCoul, 418; *Reid* v. *Hancock*, 10 Hamp., 368; *Kellog* v.
*Mix*, 37 Conn., 243.

*Houston & Reynolds*, for appellees.

The real question in this case is, whether the paper, " Want
Sarah relatives have all property." S. A. M. Sadler," is a
will in law; whether, after consideration of both the face of
the paper and hearing any evidence competent to show that
the paper was executed with testamentary intent; the paper
probated is testamentary in character and made with the intent
and purpose of it operating as a will. This is a pure question
of law for the court, and until this was decided there was no
necessity whatever for a jury. The court had the right and
power to set aside the *ex parte* probate of the will and declare
it no will in law on purely legal grounds and without a jury.
*Wall* v. *Wall*, 30 Miss., 91; *Edwards* v. *Smith*, 35 Miss., 197;
*Sartor* v. *Sartor*, 39 Miss., 760.

In order to be a will it must clearly appear that the writing
was designed by the person who executed it as an actual dispo-
sition of property to take effect after his death, and not to be
a mere expression of what he intended or expected to do; oth-
erwise it must be rejected, however correct in form, or how-

ever conformable to the otherwise expressed intention of the party.   Minor's Institutes, part 1, 1048; *Sharp* v. *Sharp*, 2 Leigh (Va.), 278, 285.

There is nothing in or about the paper in question that would even indicate an expectation of death, or that it was intended that it should take effect at death.   Simply a small scrap of mutilated scratch paper, merely saying, "Want Sarah relatives have all property.   S. A. M. Sadler."   Not only without date or form, which we do not complain of *per se*, but "void on its face."   It does not say "at my death," or "after my death," or "when I die," or anything of the kind. It does not say when, whether in his lifetime or at his death, the present or the future, he "want Sarah relatives have property."   As there is no date and nothing to show when it was made, so there is nothing to show when it was to take effect. Nor is there a single solitary word in the paper commonly used in giving or disposing of property either by will or even by deed, not even the words, "I give to Sarah relatives my property," much less, "I devise, bequeath or will to Sarah relatives my property."   Sadler might have "wanted Sarah relatives to have all property" at one time in his life, and might have written this down on paper, and yet not have intended that it should be his will, or that it should operate and take effect at his .death.   What is there upon the face of this paper, or, for that matter, in the record, which shows that this was intended as a disposition of the property to take effect at death?   The finality of testamentary intent must be ascertained from the instrument itself.   *Waller* v. *Waller*, 1 Gratton (Va.), 454.

The testator must not only realize that the instrument is a will, but he must clearly manifest his intention to create a revocable disposition of the property named in the instrument, to take effect only at his death.   Chaplin on Wills, 384; *Hester* v. *Young*, 2 Kelly (Ga.), 31.

The intention is to be gathered from the whole writing. Jarman on Wills, p. 34, note; 36 Miss., 564.

"The will must speak for itself, and the instrument must afford its own testimony. This maxim has hardened into a truism." Schouler on Wills (2d edition), sec. 567.

We do not mean to contend that any particular form is necessary for a will or that any particular words must be used. We are speaking of substance; that it must appear some where, or in some way, that the maker of the instrument intended it to be a disposition of property to take effect at his death. We do not assert dogmatically that this must appear on the very face of the paper itself, though some authorities so hold. We frankly admit that perhaps the better doctrine is, that certain extrinsic evidence is admissible in some cases; but the courts are quite slow to allow any kind of evidence and, when it is admitted at all, it is not for the purpose of introducing new words, but only to interpret the words of the will in the light of the extrinsic facts. Schouler on Wills, secs. 273, 557, 579, and note 2.

Nor are all and any kinds of extrinsic facts admissible, but only such as surround and throw light upon it and serve to aid the court in interpreting the intention of the maker of the instrument, as expressed by the words which he has used therein. "The intention as expressed in the instrument must govern, and this must be judged of exclusively by the words used therein as applied to the subject-matter and the surrounding circumstances. 1 Jarman on Wills, 281.

Parol evidence cannot be admitted to supply, contradict, enlarge or vary the words of a will. It may sometimes be admitted to explain the intention of the testator as expressed in the will but only then in two classes of cases. (1) Where there is a latent ambiguity arising *de hors* the will as to the person or subject matter meant to be described. *Idding* v. *Idding*, 10 Am. Dec., 450, 451; *Avery* v. *Chappell*, 16 Am. Dec., 53, 55, 56; *Mears* v. *Bradford*, 9 Leigh (Va.), 358; *Love* v. *Buch-*

*anan*, 40 Miss., 758; *Gilliam* v. *Brown*, 43 Miss., 641. The intention must be gotten from the will itself; parol evidence is not admissible to add to or take from it. *Magee* v. *McNeill*, 41 Miss., 17.

*Gilleylen & Leftwich*, on same side.

The only question raised by the proceeding, which is set up as *res adjudicata*, was whether the paper was a will on its face. The probate of a will in common form is not like any ordinary decree or judgment, which protects those acting under it, but a mere incipient step, and binds no one. *Kelly* v. *Davis*, 37 Miss., 76; *Murphy* v. *Murphy*, 39 Miss., 214. This probate in common form was not intended to bind anybody interested to controvert it. It cannot be pleaded as *res adjudicata* in a direct suit which questions the validity of the will, as the bill does in the present case. *Martin* v. *Perkins*, 56 Miss., 204.

We come now to the main question—the sufficiency in law of the will found in this record, even admitting, for argument, that it is in decedent's handwriting. Our statute, code 1892, § 4488, says: "And, moreover, if not wholly written and subscribed by himself or herself (the testator), it shall be attested by two or more creditable witnesses in the presence of the testator or testatrix." Our statute is found in the codes of Virginia, Kentucky, Texas and West Virginia. In the codes of North Carolina and Tennessee the will must not only be wholly written by the testator, but must be found among his valuable papers or left at the house of another for safe keeping. Stimson's Am. Stat., 2645. In Louisiana and California the will must be wholly written, signed and dated by the testator. *Billings' Est.*, 64 Cal., 427; § 1277, civil code; *Barney* v. *Hays*, 28 Am. St. R., 498. The same statute is in force in Montana, Utah and North Dakota as is found in Louisiana and California. In no other state is a holographic will permissible, so far as we have observed.

On examination of the foregoing statutes, together with the

decisions of the ecclesiastical courts of England, it will be seen
that they are largely declaratory of the common law as admin-
istered by the ecclesiastical courts, as will later appear, and
which decisions bear strongly on our statute.   At common law,
before 29 Charles II., chap. 3 (statute of frauds), personalty
could be devised by holographic will.   Shoulder on Wills, sec.
6; *Leathers* v. *Grenacre*, 53 Me., 561; *Hubblefield* v. *Brown-
ing*, 4 Ves., Jr., 200; *Boyd* v. *Boyd*, 6 Gill. & John.
(Md.), 25.

The custody of the will is of the highest importance.   1 Jar-
mon on Wills (5th Am. ed.), 242, 243; *Mechels* v. *Grierden*,
2 Lee's Ecc. Rep.; *Crisp & Ryden* v. *Walpole*, 2 Haggard's
Ed. Rep., 531; *Rutherford* v. *Maule*, 4 Haggard, 213; *Saph*
v. *Atkinson*, 1 Adams Rep., 213; *Russell* v. *Mariette*, 1 Cur-
teis, 9.

The alleged will here is not dated.   A date as a means of
identification is important.   29 Am. & Eng. Enc. L., 127.   In
California, date is absolutely necessary (*Est. of Martin*, 58
Cal., 550), and is given much emphasis in Tennessee.   *Reagan*
v. *Stanley*, 2 Lea, 316.

The facts must exclude the idea that it is a worthless paper—
not cared for or preserved, but repudiated and no longer in-
tended to have the effect of a will.   *Tate* v. *Tate*, 11 Humph.,
465; *Harrison* v. *Burger*, 1 Hawks. Rep., 385.   A will found
in a bureau drawer, among worthless papers and rubbish, is
not good in North Carolina.   *Little* v. *Lockman*, 4 Jones, 494.

Where the testator was seen to fold a will and put it in a
pocket-book eight months before his death, and it was not seen
again until shortly before the trial of the issue, it was held not
to be good.   *Adams* v. *Clark*, 8 Jones, 56.

The finality of testamentary intent must be ascertained from
the paper itself.   *Waller* v. *Waller*, 1 Grat., 454; *Short* v.
*Hall*, 86 Ala., 110.   What a nondescript paper is may be
shown by parol, but testamentary intention is not capable of
direct proof, and is inferable alone from evidence and sur-

roundings.   Here complainants have no evidence whatever to
show testamentary intent or explain the paper.   It fell of its
own weight.   There was nothing here from which in law a will
could be inferred.   *Sharp* v. *Hall*, 86 Ala., 110.

TERRAL, J., delivered the opinion of the court.

S. A. M. Sadler, at the time of his death, occupied a room
at the house of Mr. Blake, his tenant, where he died about 12
o'clock M., on the last Saturday of January, 1897.   He was
carried to his burial on the following Monday, and on the
evening of that day some papers belonging to him were taken
from a table drawer used by him, and other of his papers were
taken from his trunk, which were found at the Blake place;
and in the room in which he died, upon the mantel-piece, be-
hind a vase, a piece of paper folded was found, upon which
unfolded was written these words: "Want Sarah relatives have
all property.   S. A. M. Sadler."   This instrument, for the
purposes of this suit, is admitted to have been wholly written
and subscribed by said S. A. M. Sadler, and it was, upon the
*ex parte* petition of John R. Young, probated in common form
in the chancery court of Monroe county, before the clerk
thereof, as the last will and testament of S. A. M. Sadler, de-
ceased, and letters testamentary thereon were granted to said
Young.   S. A. M. Sadler died possessed of a real and personal
estate of the value of several thousand dollars.   Young, the
administrator *cum testamento annexo*, had disposed of all the
personal property of the decedent, and this suit involves only
the real property of which he died seized.   After the clerk of
the chancery court of Monroe county had admitted said instru-
ment to probate, and before his action was confirmed by said
court in session, Mrs. Wark and W. H. Sadler, two of the
present complainants, filed objections to the probate of said
instrument, but before taking any other steps therein with-
drew said objections when the probate in common form of said
instrument as the last will and testament of S. A. M. Sadler,

deceased, was completed. Thereafter said Mrs. Mary E. Wark and W. H. Sadler, and ten others, the complainants, heirs at law of S. A. M. Sadler, deceased, filed this bill against John R. Young and five others, devisees claiming under said alleged will, and seeking to cancel said instrument as a will as forming a cloud upon their title to the property described in the bill and claimed by them as the heirs at law of said decedent, praying for an issue *devisavit vel non*, if necessary, or any other appropriate relief.

The respondents claimed as to Mrs. Wark and W. H. Sadler that the matter was *res judicata* by reason of the probate of said instrument as hereinbefore stated, and specially set up and pleaded said instrument as being the last will and testament of the decedent. The proof showed that S. A. M. Sadler, deceased, inherited all, or nearly all, of the property in controversy from his wife Sarah, who died February 7, 1895; that his wife in her lifetime was desirous of making a will and of devising the property to her own blood kin in exclusion of the relatives of her husband, and had been dissuaded therefrom by a promise from her husband that at his death the property should go as she wished. It was also shown that Sadler, after the death of his wife, had several times expressed an intention of giving the property to her relatives.

The chancery court canceled the document as a will and annulled the probate thereof.

1. We think the plea of *res judicata* was rightly overruled. It was optional with Mrs. Wark and W. H. Sadler whether they would make the contest *in limini* or after the instrument had been probated in common form. Unless all the heirs at law of Sadler had been made parties to the proceeding to establish the instrument as his will, the action of the court thereon would not bar them of making any contest they might choose concerning it.

2. The instrument probated in common form as the last will and testament of S. A. M. Sadler, deceased, is neither in form

nor substance a will. It does not purport on its face to be a declaration of what he intends shall be the disposition of his property after his death.

There is not a word in the instrument of a dispositive character, nor was any collateral evidence given of the intention of the writer in respect to the instrument. If he had written on this paper or said of it: "This is my will" or other like words, it would be taken as a legal will. The paper is not dated, and except from its being found within the room in which he died there is nothing to indicate that it was recently written.

There was ample evidence that the decedent intended that his property should go to his wife's relatives; he had several times declared such to be his intention; but there is not a scintilla of evidence that he meant this paper to be an expression of such intention. We might readily conjecture that such was his purpose, but we cannot proceed upon mere conjecture, and the evidence—even a particle of evidence—that Sadler meant the paper to have effect as his will is wanting. "It is not for the courts to declare that to be a testamentary disposition of his estate where it does not clearly appear that such was the intention of the individual executing it." *In re Richardson*, 94 Cal., 65.

"If the instrument was not testamentary either in form or substance (none of the gifts in it being expressed in testamentary language, or being in terms postponed to the death of the maker), and if no collateral evidence is adduced to show that it was intended as a will, probate will not be granted of it as a testamentary document." 1 Jarman on Wills, * 24.

Inasmuch as there is nothing on the face of the paper nor in the evidence to show that this identical instrument was meant by Sadler to be a disposition of his property after his death, we think the court rightly adjudged it to be annulled.

*Affirmed.*