## SULLIVAN *v.* JONES.

[93 South. 353, No. 22691.]

1. WILLS. *Letter constituting valid holographic will must be of testamentary character, wholly written, dated, and signed by testator.*

   For a letter to constitute a valid holographic will, it must be testamentary in its character, wholly written, dated, and signed by the testator.

2. WILLS. *Letter not containing dispositive word, not will, in absence of evidence that it was intended to be testamentary.*

   A letter, though wholly written and signed by one, which does not purport on its face to be a will, and does not contain a dispositive word, in the absence of evidence that it was intended to be testamentary in character, is not a will.

3. WILLS. *Letter held not will.*

   Where a soldier has taken out a government life insurance policy, payable to himself, and has instructed that it be mailed to his aunt for safe-keeping, who writes the aunt to know if she has received the policy, and in the letter states that "it means five thousand dollars to you or me," is not dispositive in form or substance, and is not the last will and testament of the writer.

APPEAL from chancery court of Simpson county.

HON. D. M. RUSSELL, Chancellor.

Proceedings in chancery by Mrs. Anna Lou Jones against L. J. Sullivan to probate the last will and testament of Jesse D. Sullivan, deceased. From decree admitting the will to probate, defendant appeals. Reversed, and petition dismissed.

*W. M. Lofton,* for appellant.

There is nothing about either of the letters to show that the writer intended them as a will, and a paper which on its face does not purport to be a will and which does not contain a word of a dispositive character is not a will. *Young et al.* v. *Wark,* 76 Miss. 829, 25 So. 660.

In the case just cited, the court was construing a paper, alleged to be the last will and testament of one S. A. M. Saddler. At the time of his death, he was occupying a room at the house of a tenant named Mr. Blake, and died on the last Saturday night in January, 1897, about 12 o'clock, P. M. He was buried on the following Monday, and after his burial, there was found in his room upon the mantelpiece, behind a vase, a piece of paper, which was folded, and being unfolded, there was found written the following words: "Want Sarah relatives have all property. S. A. M. Saddler." In this case, it is shown that Sadler inherited the property in controversy from his wife, Sarah, and that during her lifetime, she was desirous of making a will and devising the property to her own blood kin, in exclusion of the relatives of her husband, but that she had been dissuaded from doing so by her husband by the promise from him at his death, the property should go as she wished. It was also shown after the death of his said wife, Sarah, that Saddler had on a number of occasions expressed an intention of giving this property to the wife's relatives. I omitted to state that the chancery clerk had admitted this paper to probate as a will. However, when the case was heard before the chancery court, the court cancelled the document as a will and annulled the probate thereof. On appeal to this court, the case was affirmed.

In speaking of the proposed Saddler will, the court said: "It does not purport on its face to be a declaration of what he intends shall be the disposition of his property after his death. There is not a word in the instrument of a dispositive character, nor was any collateral evidence given of the intention of the writer in respect to the instrument." Now, if this can be said of the proposed Sad-dler will, then what could be said of these letters, which the complainant in the court below offered as a will? These letters merely state that the writer had made a policy of five thousand dollars insurance payable to the said Mrs. Anna L. Jones. Also I would call the attention of this

court to the fact that the letters do not say what company issued the five thousand dollar policy of insurance, and so there is no policy identified by these letters. And courts cannot supply defects in a will but can only construe what is written therein. *Johnson* v. *DeLome Co.,* 77 Miss., 15, 26 So. 360. Along the same line, I might add that the statute of wills only provide for the devolution of property by wills actually made, and not by what those parties intend, however definitely, to make, but do not make. *Schlottman* v. *Hoffman,* 73 Miss. 188, 19 So. 893.

The case before this court is unlike the case of *Buffington* v. *Thomas,* 84 Miss. 157, 36 So. 1039. In the Buffington case, Mamie Buffington, the wife of appellant, M. C. Buffington, was sick with consumption and went to San Antonio, Texas, for her health. While there she wrote a letter to Mr. E. Drenning of Yazoo City, Mississippi, in which she said among other things, that: "In case I die see that old Buffington has nothing of mine, not even a lock of my hair. Eliza has did what she could for me and I want her to have our home in Yazoo City." Of course, the court would construe this letter as a will, as it certainly expresses the intention of the writer. The letter states that the writer does not want old Buffington to have any of her property, and then says that she wants Eliza to have her home in Yazoo City, giving expression to her intentions. But there is no such intentions expressed in the letters offered as a will in the case at bar.

I am not unmindful of the fact that wills written *in extremis* should be liberally construed, but no such a state of affairs existed at the time these letters were written by the said Jesse D. Sullivan. There he was a soldier in the United States Army, buoyant with hope, with perfect health, he wrote in a transport of happiness, telling his kin of his thoughtful remembrance of them during the Christmas holidays and expressing the hope that he might be able to get a furlough and visit them. But suppose the court should indulge in a liberal construction of all wills made by soldiers, whether made *in extremis* or otherwise,

then I insist that in the case before the court there is nothing to construe. The letters are not in form or substance a will, and there is nothing of a testamentary nature or character about them. As to the third cause of demurrer, I will state that the argument made herein in support of the first cause is equally applicable to the third, and so I will not repeat here what I have just stated, and so I submit this argument not only in support of the first cause of the demurrer, but also in support of the third cause.

*Hilton & Hilton,* for appellees.

Testimony was offered by complainant and on the facts in the case the lower court held that the letters should be construed as a will, using this significant language in his decree: "The court further finds as a fact that the two letters herein decreed to be the last will and testament of Jesse D. Sullivan when construed together, in the light of the environment and condition of the said Jesse Daniel Sullivan, deceased, at the time he wrote said letters, as shown by the facts in this case, should be and is considered as an expression from said Jesse Daniel Sullivan, deceased, as being his last will and testament and his desire as to what disposition should be made of his property at his death."

Now the general rule is that in the construction of wills, the object is not to declare them invalid but to sustain them if legally possible. See section 167 of Wills, 28 R. C. L., page 206. Also in the construction of wills that each will must be largely construed upon its own verbiage and under the circumstances surrounding each particular case. Sections 165 & 166 of 28 R. C. L., pages 204 & 205.

We cite the court the following authorities to show that the lower court was correct in construing these letters as the will of deceased. However, the facts are not exactly the same but they will indicate that other expres-

sions, used by other testators, not as strong as the expressions here, were accepted and probated as a will. We shall not prolong this brief by copying herein excerpts from said authorities but will ask the court to kindly read them and we think a reading of them will convince this court that the lower court did not err in overruling the demurrer on entering the final decree that he did enter. *Eaton* v. *Brown,* 48 Law Ed. U. S. R.; *Tarber* v. *Tarber et al.,* 9th Law Ed. U. S. R.; *Mylam et al.* v. *Stanley et al.,* 17 L. R. A. (N. S.) 1126; *Anderson* v. *Pryor,* 10 Smedes & Marshall, 620, *Sartor et al.* v. *Sartor,* 39 Miss. 760; *Redhead,* 83 Miss. 141; *Buffington* v. *Thomas,* 84 Miss. 157; *Prather* v. *Prather et al.,* 97 Miss. 311.

In connection with the above authorities we call the court's attention to the fact that these letters were construed by the lower court as a will. And therefore if the expressions used in them are subject to be construed as a will or otherwise, then under the rules of this court, the decree of the lower court will not be disturbed. Of course, however, if taken all together the letters cannot be construed as a will, giving to them every favorable construction in that respect, then of course we recognize the rule that this court would reverse the case.

Therefore we most respectfully submit that this case should be affirmed.

SYKES, P. J., delivered the opinion of the court.

The appellee instituted proceedings in the chancery court to probate in solemn form the alleged last will and testament of Jesse D. Sullivan, deceased. The bill in substance alleges and the facts are that the appellee was the aunt of the deceased; that she aided and assisted him during his childhood; that he spent a great deal of his time with her, and was very fond of her; that during the late war he was in the army, and while stationed at Alexandria, La., wrote the following letters:

"Alexandria, La., 1/22/18.

"Mr. E. B. Jones, Weathersby, Miss.—Dearest Uncle: I will answer your letter I just received yesterday. Sure was glad to hear from you all. Say how is your crop and every little thing in Mississippi. Say Uncle, how would you like for me to get a furlough and come to see you all. I think I will get a furlough soon but cant say just when. I intended to send you all something for Christmas but I have been sick and had mumps too until I couldn't go to Alexandria to get any for Christmas for you all. There is quite a difference in me now and there was the last time you saw me I weigh one hundred and eighty-five pounds. and I am five feet ten inches tall.

"I will remain your nephew as ever,

"Sgt. J. D. Sullivan,

"Co. K. 153 Inf. Alexandria, La."

"Camp Beauregard, La., March 1, 1918.

"Miss Delia Jones, Weathersby, Miss.—Dearest Cousin: Here I go writing to you but I have nothing else to do so I thought I would drop you a few lines to let you all hear from me. Say Delia tell Aunt Anna to go to Weathersby and call for Anna L. Jones' mail as I had a five thousand dollar live insurance made to her. Well dear I guess I had better close and write more next time but I just cant understand why I dont hear from some of you all.

"I am your little soldier cousin as ever,

"Sgt. J. D. Sullivan,

"Co. K. 153 Inf. Camp Beauregard,

Alexandria, La."

"Alexandria, La., 3/4/1918.

"Mrs. M. L. Jones, Dearest Aunt: I just cant understand why I cant hear from you. I had a five thousand dollar life insurance made to you and I haven't heard from you I wish you would only answer my letters but you haven't never sent me my box of eats. Perhaps the reason you have not got it was sent to Mrs. Anner L. Jones, Weathersby, and did not have any R. F. D. on it at all. If you have not got it I wish you would call at the office and get it as it means five thousand dollars to you or me and be sure

and see about it.  Well Aunt I have been so busy all day I dont feel like writing so I will close and be your little nephew as ever.

"SGT. J. D. SULLIVAN,

"Co. K. 153 Inf. Alexandria, La."

E. D. Jones, to whom the first letter was written, is the husband, and Miss Delia Jones the daughter, of appellee. It seems that the only estate left by Sullivan, who by the way was either killed or died while in the army, was the proceeds of this government life insurance policy for five thousand dollars.  This policy was made payable to the deceased.  The deceased died leaving a brother, the appellant in this case.  The chancellor upon these facts held that these letters, especially the letter to this appellee, was testamentary in character, and constituted the last will and testament of deceased, whereby he bequeathed to this appellee the proceeds of the five thousand dollar life insurance policy.  In this letter it will be noted that this young man was anxious for his aunt to receive his life insurance policy, which he had instructed be sent her. The chancellor evidently thought that this expression in the letter was dispositive in its nature, namely:

"If you have not got it I wish you would call at the office and get it as it means five thousand dollars *to you or me* and be sure and see about it."

In the case of *Sartor* v. *Sartor,* 39 Miss., 760, the court, in deciding whether or not a writing constituted a will or a deed, stated that:

"Its true character . . . must be determined by the nature of its provisions, which it is true may sometimes be characterized by the attendant and concurrent circumstances of its execution."

In *Young* v. *Wark,* 76 Miss. 829, 25 So. 660, there was an attempt to probate as the last will and testament of one Saddler a paper found in the room undated, and wholly written in his handwriting, and reading as follows:

"Want Sarah relatives have all property.

"S. A. M. SADLER."

This court held that this paper was neither in form nor substance a will, and in the absence of any evidence to show that it was intended as a will, it was not one. In the cases of *Buffington* v. *Thomas,* 84 Miss. 157, 56 So. 1039, 105 Am. St. Rep. 423, and *Prather* v. *Prather,* 97 Miss. 311, 52 So. 449, this court held that letters testamentary in character, and wholly written and signed by the testator, constituted valid holographic wills.

Under these decisions it is well settled that a letter, wholly written and signed by a deceased, where it is his intention to do so, and which does dispose of his property, may constitute a valid holographic will, that the intention of the writer to dispose of his property after his death is the determining question, and that parol testimony is also admissible to show whether or not this letter was intended by him as a will.

A careful consideration of these letters leads us to the conclusion that the writer of them was in no wise attempting to dispose of the proceeds of this policy after his death; that he was merely concerned with knowing whether or not his aunt had received the policy, since he had directed that it be sent to her. It may have been that he thought she was his heir, and would therefore inherit his estate in case anything should happen to him. The fact that he was a soldier and might have to give his life for his country in no wise shows that he was attempting to dispose of the proceeds of this policy in the letter. In the language of the opinion of the court in the case of *Young* v. *Wark, supra:* This letter "does not purport on its face to be a declaration of what he intends shall be the disposition of his property after his death. There is not a word in the instrument of a dispositive character, nor was any collateral evidence given of the intention of the writer in respect to the instrument."

The decree of the court is reversed, and a decree will be entered here dismissing the petition.

*Reversed and decree here.*