H. E. MONTAGUE, et al., Respondents, v. W. FRANK STREET, Anna G. Walton, Robert S. Montague, and Ida C. Curry, Appellants.

(231 N. W. 728.)

Opinion filed February 25, 1930.   Rehearing denied July 30, 1930.

*Crawford, Cain & Burnett* and *Zuger & Tillotson,* for appellants.

*Simpson & Mackoff* and *Dullam, Young & Burke,* for respondents.

BURR, J. The petitioners presented to the county court of Stark county a certain instrument, alleging it to be the holographic will of one Mary J. McGillivray Street. The county court admitted the instrument to probate as such will, and from the order and decree of the county court the respondents appealed to the district court. This court made findings of fact and conclusions of law affirming the decree of the county court, denied a motion for judgment notwithstanding the findings or for a new trial, and entered judgment in favor of the petitioners. Frim this order and judgment of the district court the respondents appeal.

The instrument involved in this case was the subject of a prior suit. In McGillivray v. First Nat. Bank, 56 N. D. 152, 217 N. W. 150, we held that the instrument presented did not create a trust of property for the benefit of the persons named therein. We did say:

"All of the expressions and directions bearing upon the disposition of the property in the instant case are appropriate to a testamentary disposition, rather than to a trust, and when all are considered together it seems to us that the conclusion is inescapable, that the deceased really intended the disposition as a testamentary one and doubtless believed that she had done all that was necessary to give effect to her testamentary intention. Whether or not she had made a valid will is a matter that we cannot properly decide in this case, and we therefore express no opinion upon it."

The interested parties then commenced this action to have the instrument declared to be a will.

The specifications of error all center around two propositions:

First, that the instrument is not executed in accordance with the requirements of the statute so as to entitle it to be termed a will; and

Second, the testimony fails to show the alleged testatrix intended such instrument should operate as a will.

The following is a correct copy of the instrument in dispute:

"Money in Bank to be disposed of

| | |
|---|---:|
| H. E. Montague | 10,000 |
| Maria Wheat | 10,000 |
| Willetta McGlashan | 3,000 |
| Marian McGlashan | 3,000 |
| William Wheat | 2,000 |
| Charles Wheat | 2,000 |
| Fred Wheat | 2,000 |
| Watson Wheat | 2,000 |
| Florence Griffith | 2,000 |
| Mary Jane Griffith | 1,500 |
| Richard Griffith June | 1,000 |
| Norman Montague | 3,000 |
| Richard Montague | 2,000 |
| Hamilton Montague | 2,000 |
| Mary Currier | 1,000 |
| Donald Montague | 2,000 |

and Donald the Ranch.

"Mary J. McGillivray Street
"Oct. 1923."

On the death of Mary J. McGillivray Street this instrument was found in her safety deposit box in the possession of the First National Bank of Dickinson, North Dakota, enclosed in a sealed envelope addressed as follows:

"For R. H. Johnson
and
Claud Montague"

The record shows that Mrs. Street was a resident of the city of Dickinson, county of Stark, and died on the 22d day of July 1924. For some time previous to her death she had been accustomed to spending some time in southern California and on May 10, 1915, she executed what appeared to be a will written in longhand and apparently signed in the presence of two witnesses. This instrument made numerous bequests and appears to be a complete disposition of all property which she owned.

It is the claim of the petitioners however that this instrument in

dispute, termed a holographic will, is a later instrument intended for a will, executed as such and therefore must be admitted to probate as her will. It is admitted the whole of the instrument is in the handwriting of Mrs. Street, but the appellants say the instrument is not executed in compliance with the requirements of our statute, was not intended for a will, and therefore, cannot be considered as a will.

It is to be remembered we are not construing the document for the purpose of determining the intent of the alleged testator as expressed by more or less ambiguous statements in a will. It is not a question of the construction of a will. It is a question whether such instrument is a will, or a mere memorandum, or a document which Mary McGillivray Street may have thought to be a will. Much reliance is placed upon statements which it is said Mrs. Street made before and after the drafting of this memorandum. Testimony was offered by the niece, Mrs. McGlashan, to the effect that Mrs. Street told her "how to make a holographic will, that she herself had everything fixed," and there was testimony by H. E. Montague to the effect that Mrs. McGillivray told him he would find in the safety deposit box the disposition of her property or money. This was offered to show that in 1923 she stated that she had made a will. Prior to her marriage to Mr. Street in 1922 she had made a will, but this was revoked by her marriage. The marriage of a woman revokes a previous will made by her. See § 5658 Comp. Laws. Consequently there was this attempt to show that she must have made a will after the marriage—the theory being that this memorandum was her will. Just why it is assumed she knew that her marriage to Mr. Street revoked the previous will is not shown.

The general rule regarding the admission of declarations made by the alleged testator covers two classes of cases—those which are part of the res gestæ, such as the declaration to a witness that a certain instrument is his will and that he desires the witness to sign as a witness; and declarations made before or after the execution of the instrument, though not connected with its execution, when it is necessary to show the condition of the testator's mind at the time of the execution. Most of the cases arise upon an attempt to show that the testator said he had not executed the instrument and the rule is applied because such declarations, purely hearsay in their nature and which are not

against the interest of the testator, cannot be used to vary or change the instrument presented. But the principle is the same in the case where it is attempted to bolster a document by such declarations as is done in the case at bar. To permit the use of these declarations to establish the instrument as a will is in fact saying that without these declarations the document is not a will. To thus permit the reformation of a document would be to do violence to the statute of wills. As shown by 5 Wigmore, Ev. 2d ed. 408, the application of this rule to wills excludes "the fact that the draftsman made a mistake, i. e., it prevents the testator's oral or written instructions, or other expressions of intent to overthrow or replace the words of the will. In short, it excludes everything that would be excluded by the rule of Integration" discussed by the author and dealing with the varying of the terms of a writing. It is as much variance of the terms of a will to add something to it as it is to subtract something from it, or to change the meaning when the meaning of the written portion is simple and plain.

In Throckmorton v. Holt, 180 U. S. 552, 572, 45 L. ed. 663, 673, 21 S. Ct. 474, in the cases contained in Class A (cases cited in the footnote under Class A) it is held:

"That declarations, either oral or written, made by a testator, either before or after the date of the alleged will, unless made near enough to the time of its execution to become a part of the res gestæ, are not admissible as evidence in favor of or against the validity of the will. The exception to the rule as admitted by these cases is that where the issue involves the testamentary capacity of the testator, and also when questions of undue influence over a weakened mind are the subject of inquiry, declarations of the testator made before or after, and yet so near to the time of, the execution of the will as to permit of the inference that the same state of mind existed when the will was made, are admissible for the purpose of supporting or disproving the mental capacity of the testator to make a will at the time of the execution of the instrument propounded as such. These declarations are to be admitted, not in any manner as proof of the truth of the statements declared but only for the purpose of showing thereby what in fact was the mental condition, or, in other words, the mental capacity of the testator at the time when the instrument in question was executed."

In Kennedy v. Upshaw, 64 Tex. 411, where it was alleged a codicil

revoking a former will was forged, it was held: A "statement of the testator made three days after the alleged execution of the codicil to the effect that he had made no change in the disposition of his property and intended to make none" was inadmissible, "since they formed no part of the res gestæ, and since there was no question as to the mental condition of the testator." See also Ricketts v. Ricketts, 151 Tenn. 525, 267 S. W. 597. In Lipphard v. Humphrey, 28 App. D. C. 355, affirmed in 209 U. S. 264, 52 L. ed. 783, 28 S. Ct. 561, 14 Ann. Cas. 872, it is said "Declarations of an illiterate testatrix prior and subsequent to the date of her will as to how she intended to dispose or had disposed of her property" are inadmissible—except as bearing on the question of mental capacity. See also La Rue v. Lee, 63 W. Va. 388, 14 L.R.A. (N.S.) 968, 129 Am. St. Rep. 978, 60 S. E. 388; Ditton v. Hart, 175 Ind. 181, 93 N. E. 961 (admissible to show mental capacity but not undue influence); Tingley v. Cowgill, 48 Mo. 291; Gibson v. Gibson, 24 Mo. 227, 232.

"It was proper not to admit declarations of testatrix that the will in question was not her will." Woodroof v. Hundley, 133 Ala. 395, 32 So. 570.

It is permissible to furnish declarations to prove testamentary capacity, not because they are offered to prove the validity of a will, but because they are presented to show the capacity of the party to make a will, when that feature is involved and therefore statements made within a reasonable time before or after the date are admissible to show the mental state. In Boylan v. Meeker, 28 N. J. L. 274, it is said that "conduct and declarations of the testator after the will is made, manifesting ignorance of the existence of the will are not competent to show that the testator had never made the will in question." This is under the rule that such declarations are not competent, for or against the validity of the instrument. There is a difference between admitting declarations of the decedent in order to assist in determining the state of mind of the decedent at the time the alleged will is made, and admitting them for the purpose of showing the truth of the statements. The former is unnecessary in this case there being no issue as to her competency. In cases where the purpose is to prove a lost or destroyed will then declarations of the testator may be admitted for the purpose of

showing the contents of the will, after it has been established the will was lost or destroyed.

When the question of genuineness of a signature was involved, or the contents of a lost will, declarations of the decedent that she had signed the will are permitted. See Johnson's Estate, 170 Wis. 436, 175 N. W. 917. There are many cases permitting extrinsic evidence to interpret a will, such as testimony showing who is intended by the use of certain names such as "Dear Old Nance" in Clarke v. Ransom, 50 Cal. 595, or testimony showing what property is really meant, or who is meant by "Dear Bella." But this is not the purpose of these offered declarations. The purpose is to show that an instrument which confessedly contains no statement that it is a will, or does not refer to disposition of property after her death, or does not use the usual words of testamentary character and which standing alone might be one of several classes of documents was intended by the decedent to be her will.

There are cases to the contrary, which might permit the proof of declarations for any purpose such as the case of Re Wellborn, 165 N. C. 636, 81 S. E. 1023, but here the opinion says this rule is "under our decisions." Apparently North Carolina had adopted a different rule. In Gibson v. Gibson, 24 Mo. 227, we find a lengthy discussion of the reason for the rule excluding declarations except to show mental capacity, etc. It is held (p. 231 of 24 Mo.): "Is a will or deed, valid upon the face of it, to be destroyed or in any way affected by the declarations of the devisor or grantor? Some strong authority is necessary to support such a proposition. In the case of a deed, it would not be claimed. A will, to be sure is ambulatory and nothing vests during the life of the devisor. Still however it could be altered or revoked only in a legal manner." (Quoting from Comstock v. Hadlyne Ecclesiastical Soc. 8 Conn. 263, 20 Am. Dec. 100.) Several English cases and cases from different states are cited and discussed.

If declarations cannot be shown in order to infer no will had been made, because they are hearsay, and violate the parol evidence rule, thus making it rest in parol, then they cannot be shown in order to infer that a will was made; and as said in Rusling v. Rusling, 36 N. J. Eq. 603, 608, "For the purpose of proving matters not relating to his existing mental state the assertions of the testator are mere hearsay. They cannot be regarded as evidence of previous occurrences unless they come

within one of the recognized exceptions to the rule excluding hearsay testimony." See also Re Gordon, 50 N. J. Eq. 397, 26 Atl. 278, where declarations of a testator were offered "for and against the authenticity of the disputed paper as his will."

The "declarations of a testator that he had written a will . . . are not admissible against heirs at law . . . such declarations not being in any sense against testator's interest, within the exception to the rule of hearsay evidence." Mercer v. Mackin, 14 Bush, 434, 441.

Now in the case at bar it is sought to prove the declarations of the decedent were that she had made a will, that she had written it herself and where it could be found. This testimony is offered in connection with the finding of a memorandum in order to prove that this memorandum is a will. At the best it could only prove the opinion of the decedent in that she thought it was a will. It is true the case admits the document is in her hand writing, and bears her signature; nevertheless the rule against admission of such declarations is just as binding, otherwise it would permit the proof of a will itself by parol testimony, by hearsay evidence, instead of presenting a document executed in accordance with the requirements of statute, and containing words of testamentary character.

In the case of Mercer v. Mackin, 14 Bush, 434, 441, supra, the court, after discussing the presumption of revocation arising from the fact that an alleged will could not be produced, says: "But waiving this question, the evidence of the declarations to Mercer was inadmissible upon other and more substantial grounds. He declared he had made a will—had written it himself. This could in no event be sufficient. In order that it might be a valid will, he must not only have written it, but must have subscribed his name to it at its conclusion. . . . There is no evidence that he said he had subscribed it with his name, or that he knew such subscription was necessary to its validity.

"What he said was therefore but an expression of his opinion as to what was necessary to constitute a valid will, in which he may have been wholly mistaken.

"But had he declared that he wrote it and signed it with his own hand, evidence of such declarations would not be sufficient to authorize the probating of the will."

All this testimony being incompetent we have nothing to show whether

this document is a will or a mere memorandum except, the instrument itself which is admitted to be in the handwriting of the decedent.

Appellant's first contention of lack of statutory requirements is based on the contention that the instrument presented as a will is not dated. The statute involved (Comp. Laws 1913, § 5648) says:

"A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form and may be made in or out of this state and need not be witnessed."

Under the civil law an olographic, or holographic will was given a somewhat superior position when it came to the manner of proof. Being wholly autographic it was presumed to be what it purported to be. It proved itself. Thus we find that generally on the continent of Europe, and Scotland, in Quebec and in Louisiana and other countries and states where the civil law prevails there is not always the same strictness of qualification in interpretation required as where the common law jurisprudence is in the ascendancy. The testator, having written it himself he was presumed to be competent and to have acted voluntarily and without undue influence. For this very reason however, it was necessary that the will should be "entirely written, dated and signed by the hand of the testator himself."

The definition incorporated in our statute is found verbatim in the codes of other States. It came to us from California and there was taken from Louisiana. Martin's Estate, 58 Cal. 530, 531.

Despite some more or less popular conception the "privilege of making testamentary disposition of property is not an inherent or even a constitutional right," it is wholly statutory and compliance with statutory requirements "is absolutely necessary to the validity of any instrument offered as a testament." Moody v. Hagen, 36 N. D. 471, L.R.A. 1918F, 947, 162 N. W. 704, Ann. Cas. 1918A, 933; Re Carpenter, 172 Cal. 268, L.R.A.1916E, 498, 156 Pac. 464; Walker's Estate, 110 Cal. 390, 30 L.R.A. 460, 52 Am. St. Rep. 104, 42 Pac. 815; Alexander v. Johnstone, 171 N. C. 468, 88 S. E. 785, says: "The right to dispose of property by will, being statutory can be exercised only by following the requirements of the Statute." Without a will property would go to the heirs as determined by statute and therefore it is only by compliance with the statutory requirements that such an heir can be deprived of his inheritance by the act of a testator, confessedly

disposing of property to take effect after he has died and the property no longer has a legal owner. See Re Seaman, 146 Cal. 455, 106 Am. St. Rep. 53, 80 Pac. 701, 2 Ann. Cas. 726. Thus it is as stated in Calkins v. Calkins, 216 Ill. 458, 1 L.R.A.(N.S.) 396, 108 Am. St. Rep. 233, 75 N. E. 182, that it is the intention of the legislature which controls and not the intentions of the testator when the requirements for such post vitam disposition are concerned. See also Re O'Neil, 91 N. Y. 521, and Re Andrews, 162 N. Y. 1, 48 L.R.A. 662, 76 Am. St. Rep. 294, 56 N. E. 530. Hence the statutes dealing with the requirements for the draft of a will must be construed according to their plain and obvious meaning. See Lippitt v. Huston, 8 R. I. 415, 94 Am. Dec. 115; Walker's Estate, 110 Cal. 390, 30 L.R.A. 460, 52 Am. St. Rep. 104, 42 Pac. 815. This latter case was a case in which a witness to a will inadvertently used the testator's surname and his own initials in signing as a witness. It was held this was not in compliance with the statutory requirements. In the case of Remsen v. Brinckerhoff, 26 Wend. 325, 37 Am. Dec. 253, it is held: "Every one of the four requisites in contemplation of the statute is to be regarded as essential as another; there must be a concurrence of all to give validity to the act, and the omission of any is fatal."

California announces the same doctrine in Martin's Estate, supra (p. 533 of 58 Cal.) where it is said: "We are not at liberty to hold that the Legislature intended any one of these requirements to be of greater or less importance than the other. If we may omit one why not either of the others?" The state of Pennsylvania announces the same doctrine to the effect that a paper supposedly testamentary in character, and intended by the testator to be a will, and which if proved there would be no question but what it was a will, must meet the requirements of the statute. "Testamentary paper which does not meet the requirements—is not a will." Wall v. Wall, 123 Pa. 545, 10 Am. St. Rep. 549, 16 Atl. 598. To the same effect is Chafee v. Baptist Missionary Convention, 10 Paige, 85, 40 Am. Dec. 225, though the court does say: "Statutory requisites in executing a will must be substantially complied with to render it valid, and the onus to show such compliance is on the proponents of the will."

This case is one of first impression in this state. It involves the adoption of a rule for a literal or for a liberal construction of the

statutory requirements for a holographic will—the appellants contending for the former and the petitioners for the latter rule.

The omission which appellants say constitutes fatal defect is the absence of the day from the presumed date. The instrument says "Oct. 1923." It does not say dated Oct. 1923, nor does it give the day of the month. In the case of Stead v. Curtis, 112 C. C. A. 463, 191 Fed. 529, 537, it is said it is a sufficient date for a holographic will if the day, month and year are given though not the place. The place where executed is not properly a part of the date; but the courts are practically unanimous in holding that the term "date" means the year, the month and the day of the month written by the testator in such a way that it can be known from the alleged date just when the instrument was written. In the case of Re Thomas, 155 Cal. 488; 101 Pac. 796, 799, it was held that a date is essential to the validity of a holographic will. See Re Price, 14 Cal. App. 463, 112 Pac. 482.

Thus a date which was given as 10, 1912 was held not to be a compliance with the statute. In that case it was not known whether 10 referred to the number of the month or to the day of the month. See Re Carpenter, 172 Cal. 268, L.R.A.1916E, 498, 156 Pac. 464, supra. It is true in this case the contraction Oct. is written and doubtless would be considered the name of the month but no day is given. But in Heffner v. Heffner, 48 La. Ann. 1089, 20 So. 281 it held: "The day of the month is quite as much a part of the date as the month or the year" and the requirements that a will be dated "extends to every part of the date." Further: "The mandate of the Code is positive, —without, and purposely without, any qualification or exception. The will must be dated, and the month, without the day, is no date. The hardship of the case has prompted us, in the absence of any direct adjudication of our own courts on the point, to examine the views of the French commentators dealing with the corresponding article of the Napoleon Code. They disclose the reason of the law in exacting the date, and maintain the day of the month to be essential. We find the distinction drawn by them between a wrong date, which, it seems has been held, will not vitiate, and no date, or deficient date, which will avoid the will. But the necessity of the day of the month in the date of the holographic testament is rigidly enforced by the jurisprudence under the Napoleon Code."

This is the holding of a state where the civil law prevails and one would expect, ordinarily, that a holographic will would have in Louisiana a somewhat superior position to what it would enjoy in a State where the rules of the common law are involved even though we take our probate proceedings largely from the civil law.

In the case of Robertson's Succession, 49 La. Ann. 868, 62 Am. St. Rep. 672, 21 So. 587, we find a case where the testator in a holographic will wrote the month and day in his own handwriting just before the figures representing the year which latter figures were printed on the paper. It was held this was not a compliance with the statutes requiring it to be wholly written by the testator, as the year was not written by him. In that case therefore the year was omitted from his writing, for writing by another is insufficient.

Attempt is made to explain decisions of Louisiana dealing with the requirements of a holographic will by saying that the Louisiana statute—"in order to be valid it (a holographic will) must be entirely written, dated, and signed by the hand of the testator, etc."—has been changed in our state by omitting the clause "in order to be valid it must be" so that our statute reads: "A holographic will is one that is entirely written, dated and signed by the hand of the testator himself, etc." The force of this comment disappears however, when we consider the provisions of § 5654 of our Compiled Laws, applying to all kinds of wills. This section says:

"No will or revocation is valid unless executed either according to the provisions of this chapter, or according to the law of the place in which it was made, or in which the testator was at the time domiciled."

Thus by express statute this alleged holographic will is not valid unless executed in accordance with the provisions of the statutes of this state. There is no difference in meaning between saying "in order to be valid it must be etc." and "no will is valid unless executed, etc."

A holographic will is much more susceptible to forgery than a will prepared by a lawyer, and witnessed by disinterested persons. In many states it is a requirement that such will be found among the testator's personal papers. This gives an opportunity for surreptitious placing among the papers of a forged or partially forged instrument and it needs no stretch of imagination to understand that in many cases where

a man contemplated the drafting of a will he might make memorandum showing the names of those whom he intended to be the objects of his bounty and the probable share to be given each in order to facilitate a scrivener to draft the will, and where such memorandum is stolen the date and name may be forged, or if signed in the form of a letter and sent to the scrivener the date may be forged. And so the law requires every portion of every word, every letter and figure of the will to be in the handwriting of the testator. The converse of this is true; therefore nothing can be omitted which the law requires. Hence the rule of literal construction regarding the date and other statutory requirements. In the case of Re Billings, 64 Cal. 427, 1 Pac. 701, a printed date was held not to be a compliance—it was not in the handwriting of the testator—and in Re Francis, 191 Cal. 600, 217 Pac. 746, where the first two figures of the year were printed, as so often happens on letterheads, and the other two figures were written by the testator it was held that the instrument was not "entirely written" by the testator; that he had adopted the printed matter "though unnecessary to sufficiently date the will" and "having been made a part of it by the testator along with the written matter" this date was not wholly written by him. However, this rule of "adoption" is not followed by other states as many treat the unnecessary matter as surplusage. See Re Cole, 171 N. C. 74, 87 S. E. 962; Gooch v. Gooch, 134 Va. 21, 113 S. E. 873. These two California decisions, widely separated by years show the consistent holdings of the California courts. See also Re Carpenter, 172 Cal. 268, L.R.A.1916E, 498, 156 Pac. 464, supra, where it is said that the general rule of liberal construction cannot be stretched to excuse the lack of substantial compliance with the statutory requirements of a date. Re Price, 14 Cal. App. 463, 112 Pac. 482, supra; Re Vance, 174 Cal. 122, 162 Pac. 103; Re Bernard, 197 Cal. 36, 239 Pac. 404; Re Thorn, 183 Cal. 512, 514, 192 Pac. 19; Mayborn v. Citizens Trust & Sav. Bank, 46 Cal. App. 178, 187, 188 Pac. 1034; Re Behrens, 130 Cal. 416, 419, 62 Pac. 603; Re Oldham, 203 Cal. 618, 265 Pac. 183, are further illustrations of the strictness of the California courts, throwing light on the contention that statutory requirements must be complied with literally.

It will be noted that in determining whether the statutory requirements are complied with we do not examine the contents of the instru-

ment. The instrument on its face may be a complete will and dispose of all of the property, nevertheless, as shown in Re Anthony, 21 Cal. App. 157, 131 Pac. 96, the omission of the month is a fatal defect. In this case a letter was presented as constituted a holographic will but the month was omitted. The only date was "San Francisco, 27, 1911." A second letter dated "San Francisco June 27, 1911" written to another person and referring to the former correspondence was held not to supply the necessary requirements because the second 'letter was not testamentary in its character and did not incorporate the first letter in his correspondence, as the reference thereto was not clear, certain and unambiguous.

But this construction is not confined to California. In Re Noyes, 40 Mont. 190, 26 L.R.A.(N.S.) 1145, 105 Pac. 1017, 20 Ann. Cas. 366, an otherwise perfectly good holographic will was written on a letterhead in which the words "Laurel, Mont. 190——" was printed, and the blanks filled up by the testator so that it read: "Laurel, Mont. Feb. 23, 1903," but the court held this was not a compliance with the rule that the holographic will must be entirely written, dated and signed by the testator. The statute of Montana is identical with ours. In Re Jenkin, 157 N. C. 429, 37 L.R.A.(N.S.) 842, 72 S. E. 1072, the Supreme Court of North Carolina says: "Statutes, relating to the execution and formalities necessary to give effect to holographic wills are mandatory, and not directory." North Carolina is one of the states which requires a holographic will to be found among the effects of the decedent. In the case of Sullivan v. Jones, 130 Miss. 101, 93 So. 353, we have the same rule of strict statutory construction set forth, though the main issue in the case was whether the instrument itself was testamentary in character. In the case of Beird's Succession, 145 La. 756, 6 A.L.R. 1452, 82 So. 881, it was held that a date written as follows: "9/8/18" was not sufficient even though it was contended "that by well recognized custom and usage the figures '9/8/18' are generally understood to mean in their respective order, first, the month, second, the day of the month, and, third, the year of the century in which the document is written and that the courts may take judicial cognizance thereof." Doubtless this is the custom in the United States though in Great Britain it may be customary to write the number of the day of the month first and then follow it by the number of the

month and in Re Chevallier, 159 Cal. 161, 170, 113 Pac. 130, such method was held good. In Re Vance, 174 Cal. 122, 162 Pac. 103, supra, the testator gave the day of the month, the month and setting forth the year as "in the year of our Lord one thousand" forgetting to further describe the year. There was an offer to prove that the words "nine hundred and ten" were inadvertently omitted intending to make it read the year 1910, but it was held the instrument itself had to furnish the proof.

The case of Davis v. Davis, 86 Okla. 255, 207 Pac. 1065, is of interest because of the reliance which the trial court and the respondents place upon a certain decision of the supreme court of Oklahoma. Under a statute defining a holographic will in the same terms as we define it, it was found that though the instrument offered was conceivably in the handwriting of the testator and was proper in every respect, but his name was not signed at the bottom of the instrument though he had written his name in the body of the instrument. It was held this was not a compliance with the requirements, and evidence offered showing the deceased had made "isolated statements to the effect that he had made a will without identifying the paper purporting to be his will does not meet the proof."

It is apparent therefore that by the overwhelming weight of authority the statutory requirements for the making of a will must be followed substantially as required. In the Oklahoma case relied upon by the respondents will be found numerous citations attesting further to this weight of authority.

This rule regarding date is applicable to other subjects. In State ex rel. Baxter v. Beckley, 192 Wis. 367, 212 N. W. 793, the matter before the court was a petition for a recall election which, under the statute, was required to be dated. The court held that the date means the day and the month and the year. A similar holding is found in Interior Linseed Co. v. Becker Moore Paint Co. 273 Mo. 435, 202 S. W. 569, id. 190 Mo. App. 1, 175 S. W. 309. The literal interpretation given by the supreme court of California is not confined to wills alone for in the case of Cole v. Orange County, 27 Cal. App. 528, 150 Pac. 785, the same rule is applied where the issue involved the publication of a petition for the incorporation of a city.

One of the principal cases relied upon by the trial court and re-

spondents, if not the principal authority, is Re Hail, 106 Okla. 124, 235 Pac. 916. After stating that the Oklahoma statute is copied from our statute, and that neither the supreme courts of the Dakotas nor of Oklahoma has passed upon the question, the court discusses the situation where the day of the month was omitted from the date. In arriving at the conclusion that such omission was not sufficient to invalidate the will the court proceeds to quote and construe sections of the Oklahoma statutes identical with §§ 5685, 5694 and 5716 of our Code. The Oklahoma court seems to proceed on the theory that such sections must be taken into consideration in determining whether what purports to be a will has been executed properly. Such sections have nothing to do with the execution of the will. They relate to the interpretation of the will, after it has been established as a will. The true rule in such cases is that statutes dealing with the execution and establishment of the instrument itself, in order to entitle the supposed testator to dispose of property, must be construed strictly. Before he can establish a right to the disposition of property he must show a strict compliance with the statutory requirements. After this has been done, so it is shown that the instrument is indeed a will, then the rules requiring interpretation to discover and effect the will of the testator are given a liberal construction. The principle is analogous to that underlying the establishment of statutory liens. One seeking to take advantage of the law giving him a right must show that he has complied strictly with the law; but if this is done so that his right has been established whether it be a lien or a will then the rule of liberal construction is applied in order to ascertain the intent and give effect to the right. This principle is set forth in Larson v. Henriksen, 57 N. D. 109, 220 N. W. 642, 59 A.L.R. 543, where authorities are listed.

This theory of the Oklahoma court is shown from the cases cited in support of its conclusions. For example the case of Fosselman v. Elder, 98 Pa. 159, where the question involved was one of sufficient description of the beneficiary. There was no question but what it was a will. So the rule of liberal construction was applied in order to determine what was the intent of the testator and to whom the testator was referring. The case of LaRue v. Lee, 63 W. Va. 388, 60 S. E. 389, was a case which involved merely the question of whether a holographic will consisted of two or three sheets of note paper simply

because the sheets were not attached. No other question was involved. Other cases cited involve the question not of the date but of the name of the testator, and whether the name attached in the form in which it was written, was a compliance with the statute. In all the cases, however, there was either a statute similar in terms to our statute defining signature or a statutory construction which had the same effect. For example Knox's Estate, 131 Pa. 220, 6 L.R.A. 353, 17 Am. St. Rep. 798, 18 Atl. 1021; Wise v. Short, 181 N. C. 320, 107 S. E. 134; Alexander v. Johnston, 171 N. C. 468, 88 S. E. 785; Arendt v. Arendt, 80 Ark. 204, 96 S. W. 982; Pilcher v. Pilcher, 117 Va. 356, L.R.A. 1915D, 902, 84 S. E. 667; and Barnes v. Horne (Tex. Civ. App.) 233 S. W. 859, all turned upon whether the name attached thereto was sufficient' to constitute a signature. The Oklahoma statute is identical with our § 5648 and says the holographic will must be "signed by the hand of the testator himself." Both statutory construction and statutory definition agree that "the term 'signature' includes any name, mark or sign written with intent to authenticate any instrument or writing" (see § 10366) and "includes mark, when the person cannot write, his name being written near it and written by a person who writes his own name as a witness." See § 7309. Thus purported signatures complying with these statutory requirements are signatures even though these requirements are embodied in sections other than the one defining a holographic will. Hence a holographic will, even if not published, which meets the requirements of this statute is signed. All of these cases are cited by the Oklahoma court to sustain the question of liberal construction of the requirements for a holographic will. It is clear these have no bearing upon the issue before us here because under strict statutory construction these are indeed signatures. The Oklahoma court itself quotes from its own decisions in the case of Hill v. Davis, 64 Okla. 253, L.R.A.1918B, 687, 167 Pac. 465: "The right to dispose of property by will is a creature of the statute. The legislature has the power, in granting the right, to determine and prescribe the form and manner in which it shall be exercised. . . . The provisions of the statute quoted are mandatory and there must be substantial compliance therewith." But Oklahoma failed to adopt a liberal construction when it came to the question of "signature" for in Davis v. Davis, 86 Okla. 255, 207 Pac. 1064, though the testator wrote

his own will and began by saying "Know all men by these presents that I, R. B. Davis, etc.," the court held the will invalid because "not signed at the bottom." Construction in other jurisdictions permits the written name to be considered signatures no matter where written.

This view of the necessity for compliance with the requirements of the statute in order to establish an instrument as a will is in compliance with the overwhelming if not entire weight of authority. When the testator signs in accordance with the statutory requirements he has not only substantially but completely complied therewith.

Another case cited by the Oklahoma court to substantiate its theory of the liberal construction of the statutory requirements is the case of Re Cole, 171 N. C. 74, 87 S. E. 962. In this case there was no question but what the testator had complied literally with the requirements but apparently his wife and he intended to make a joint holographic will. Hence her name was signed to it. The court held in that case that the fact that the wife's name was written on the instrument below her husband's was immaterial, and surplusage; that the husband had complied strictly with the requirements, and the whole of the will was in his handwriting. He signed his own name and it was dated in his handwriting. The cases of Levengston, 158 App. Div. 71, 142 N. Y. Supp. 831, and Re Hunt, 110 N. Y. 281, 18 N. E. 107, are not dealing so much with the question of the execution of the will as its publication, the New York court holding in the language of the former case "The rule in respect to holographic wills as to the manner and method of publication is not so close and severe as where the will is drawn and executed under the direction of an experienced scrivener." It may be interesting to note that this pronouncement is followed, almost literally, in Re Billet, 106 Misc. 229, 174 N. Y. Supp. 488, and reversed in 187 App. Div. 309, 175 N. Y. Supp. 482 on other grounds, but the latter court saying "It is all very well to say the wills of testators may not be destroyed by life tenants and remainder men . . . but we must not be unmindful of the fact that this rule only applies to valid wills, proven as such in the manner prescribed by statute." Of course such cases stated as authority are not applicable here because where the will is prepared by a scrivener it is required "to be signed, published and declared" in the presence of the witnesses. Publication therefore is necessary but the manner and form is not pre-

scribed by statute. The court is correct in saying the rule requiring publication is not the same in a holographic will as in the other kind, but with us a holographic will requires no publication.

In this opinion discussed the Oklahoma court gives a long list of cases cited as appearing "to sustain the substantial compliance doctrine" though not commenting on them. The remainder not discussed are Re Fay, 145 Cal. 82, 104 Am. St. Rep. 17, 78 Pac. 340, where the requirements were complied with literally, but the date 1859 was construed to mean 1889. As the court says the statute does not say "truly dated" nor "correctly dated" hence having a date, parol evidence was permitted to show true date. The difference between an erroneous date and entire absence of date or of a material portion of the date is shown in the quotation from Heffner v. Heffner, 48 La. Ann. 1089, 20 So. 281, supra. Re Clisby, 145 Cal. 407, 104 Am. St. Rep. 58, 78 Pac. 964, but here there was a correct date—and the issue was where the date should be placed. In the instrument offered it was at the top of the paper. This was held to be a compliance with the statute. But the statute does not say where the date or the signature shall be. The statute was complied with literally. Re Skerrett, 67 Cal. 585, 8 Pac. 181, but here the issue was whether two papers taken together constituted the instrument, for as the court said they were "wholly written by the testator and dated and signed by him," though neither separately nor sufficiently. What was construed a will consisted of two parts—one a deed and the other a letter. The court expressly says that the letter was not in itself sufficient as a will. Neither was the deed. The supposed deed was not in fact a deed because it was not delivered and it was not a will because it contained "no words of testamentary character." Thus it is clear that an instrument to be construed a will must have "words of testamentary character." It is true that these "words of testamentary character" were supplied by the letter which standing alone was not a will because it had no date, but the court found the two attached to each other and held that the purported deed supplied the date and the letter the words of testamentary character, so that together they constituted a will. Re Lakemeyer, 135 Cal. 28, 87 Am. St. Rep. 96, 66 Pac. 961, but here the holding was that the date, "New York Nov. 22, '97" was entirely dated "since the abbreviation and figures used were such as were com-

monly used to designate time, and the court would take judicial notice of their meaning." Re Hartley, 181 Cal. 469, 184 Pac. 950, involved the question of two sheets—one of which was correctly dated—comprising one instrument. Re Olssen, 42 Cal. App. 656, 184 Pac. 22 is merely the application of the rule in Re Chevallier, 159 Cal. 161, 170, 113 Pac. 130, supra, the date being 4/12/17th; Re McMahon, 174 Cal. 423, L.R.A.1917D, 778, 163 Pac. 669, where the court says: "The face of an instrument offered as a holographic will must establish fact that it is a completely executed document and if signed elsewhere than at the end, must show this to have been intended as an executing signature." Re Soher, 78 Cal. 477, 21 Pac. 8, there was a holographic will properly executed and a holographic codicil, at the foot of which appeared the words "witness, George Penlington, 123 O'Farrell Street" in handwriting of another. In harmony with case of Re Cole, 171 N. C. 74, 87 S. E. 962, this clause was held not to be a part of the will. Mitchell v. Donohue, 100 Cal. 202, 38 Am. St. Rep. 279, 34 Pac. 614, but here the issue arose over the queer spelling and grammar of the testator. The will was dated February 3, 1892, and the words "serify," "levet," "persnal" and "wis" were held to mean "certify," "leave," "personal," and "wish" respectively. Thus the California cases cited do not depart from the ordinary rule of statutory construction. The list includes the eleven cases commented upon before and the following: Barney v. Hays, 11 Mont. 571, 28 Am. St. Rep. 495, 29 Pac. 282 (see id. 11 Mont. 99, 27 Pac. 384), where the issue was whether a letter written by the testator to his lawyer constituted a holographic codicil. It was properly dated and signed. Musgrove v. Holt, 153 Ark. 355, 204 S. W. 1068, where the instrument was written partly in ink and partly pencil, but all written and dated by testator, the court holding this was entirely written by the testator. Adams v. Maris, — Tex. —, 213 S. W. 622, certainly does not sustain liberal construction of statutory requirements. It does announce the rule of liberal construction of a will to determine the testator's intent and to give effect to the intent but so far as execution is concerned says: "A paper . . . cannot, by the aid of parol testimony, be converted into a will in contravention of a statute requiring that a will be in writing." The real issue involved the question whether the instruments, one of which was correctly executed, in fact constituted one document and

became a holographic will and whether a subsequent will revoked the holographic will.

The issue in Re Levengston, 158 App. Div. 69, 142 N. Y. Supp. 829, already referred to was whether "A will written by testator at his club on a sheet of its letter paper, dated and signed by him, and shown to attesting witnesses as his will, was executed as required by law." Apparently the statute required attestation of a holographic will and the court held the evidence of attestation sufficient saying— "the rule as to the method of publication is not so severe as when the will is drawn by a scrivener."

In Buffington v. Thomas, 84 Miss. 157, 105 Am. St. Rep. 423, 38 So. 1039, there was no question whatever about the instrument in issue being wholly written, signed and dated by the testator. The issue was whether the letter was testamentary in its nature.

In Re Beckett, 103 N. Y. 167, 8 N. E. 508, involved the question of "publication," and whether certain words and acts of the testator constituted a sufficient declaration. The testatrix had written the will herself, called it "my last will and testament," wrote "signed in the presence of two witnesses," and attached her signature, with these acts were words, signs and previous declarations. The court held that all taken together was sufficient publication though saying in connection with the discussion of publication "it had often been held that a substantial compliance with the statute is sufficient."

The issue in Toebbe v. Williams, 80 Ky. 661, was whether an instrument, properly executed and intended as a will, but thought by the testator to be incomplete was in fact a will, the court saying: "A will wholly written and signed by the testator is a completed will although he may have thought to the contrary by mistake of law." The converse is true. Testator's belief that he had made a valid will is immaterial. As said in Re McMahon, 174 Cal. 423, L.R.A.1917D, 778, 183 Pac. 669. Only a will showing "upon its face due and complete execution is entitled to probate. . . . Belief of the testatrix that her holographic will was duly executed has no weight in considering the question of its legal sufficiency."

From an analysis of these cases cited as authority we can not find the principle of liberal construction upheld so as to justify departure from the plain statutory requirements for the execution of a will.

The nearest approach among cases cited, to a departure from the rule of strict construction is found in Gooch v. Gooch, 134 Va. 21, 113 S. E. 873, and Graham v. Edwards, 162 Ky. 771, 173 S. W. 127. In the former case the "codicil was written on a printed form where the part which was wholly in the testator's handwriting and signed by him was complete and entire in itself, the printed portions might be disregarded and the writing admitted to probate as a holographic codicil." This however is merely the principle of Re Cole, 171 N. C. 74, 87 S. E. 962, and Re Soher, 78 Cal. 477, 21 Pac. 8, regarding the foreign matter as surplusage.

To sustain the doctrine of liberal compliance instead of literal compliance reliance is placed on the case of Graham v. Edwards. It seems that in Kentucky there is a statute which says: "That when a writing is required to be signed, it shall not be deemed signed unless the signature is subscribed at the end of the writing." In the case before the court a holographic will had been prepared, and in writing the will the testator took the whole of a sheet of paper so that when he came to sign his name there was no room to sign at the bottom of the sheet. He signed on the vertical marginal line adjacent to it. The court held that this was a compliance with the statute. It will be noted that the statute under consideration telling where a signature should be placed is not a statute dealing with wills but is a general statute, and the court was interpreting the general statute. The court says: "The primary purpose, of these statutory provisions, is of course, to prevent the interpolation of matter between the end or close of the writing and the signature thereto, by unauthorized persons, and that purpose may be more easily fulfilled in the case of holographic writings than of nonholographic writings." The court then goes on to show how there was a practical impossibility for the testator to sign anywhere else. Of course if he had taken another sheet of paper and signed thereon and attached the paper to the instrument it would have been much more susceptible to change by unauthorized persons.

When we come to consider the authorities cited by the Oklahoma court in support of liberal construction of the requirements regarding execution we feel as if the attempt in Re Hail, 106 Okla. 124, 235 Pac. 916, to get away from the stricter rule laid down in the case of Hill v. Davis Case in the same court is not well supported.

Though the Oklahoma court considers statutes identical with ours, in an attempt to show that "November 1919" is a substantial compliance with the statute requiring date, it is apparent it establishes no rule of construction of these statutes, lays down no rule for future guidance. The court expressly says: "It is not intended, however, by this decision to announce the conclusion here reached as a rule by which to measure the sufficiency of the date or signature of any other holographic will than the one here involved." For this reason it cannot be considered as authority in establishing a rule of construction, and becomes practically worthless to us in determining what is the real meaning of the sections involved. It cannot be cited as a rule, even in Oklahoma, as the court expressly disclaims any authority for it.

The trial court cites Re Fay, 145 Cal. 82, 104 Am. St. Rep. 17, 78 Pac. 340, to the effect "that date is not the material thing though made necessary by statute" and the quotation therein from Gaines v. Lizardi (C. C.) 3 Woods, 77, Fed. Cas. No. 5,175. This Federal decision however does not pass upon the date but contents itself with showing the supreme court of Louisiana had held the will to be dated properly. The instrument was lost and witnesses who had seen it swore it was dated. It was held by both courts "the fair meaning of their language is that it bore the year, month and day; and the meaning of the language of Mrs. Smythe (another witness) that it bore date on a particular day of July, Anno Domini 1813." Hence it is no authority for the contention that the omission of the day of the month is not fatal.

The trial court seemed to rely to a great extent upon this Oklahoma decision and in his memorandum opinion he cites the cases of Re Donges, 103 Wis. 497, 74 Am. St. Rep. 885, 79 N. W. 787; Re Clifton, 207 Iowa, 71, 218 N. W. 926, and similar cases. It will be observed however, these cases are dealing with the interpretation of the will itself, after it has been established as a will. As the Wisconsin case says: "The comprehensive and all dominating rule in construing wills is that the intention of the testator must be ascertained from the words thereof, in the light of all the surrounding circumstances and that intention be given effect." Thus these and other cases cited by the trial court and by the respondents are applicable to the second question— whether the instrument itself is testamentary in character,—but throw

no light upon the character of statutory construction of the manner of executing the instrument involved.

When we consider the provisions of § 5648 of our statute, its history, its interpretation, and the overwhelming weight of authority demanding a literal compliance therewith in order to prove the execution of a will it is clear that a holographic will cannot be said to be dated when a material portion of the date is omitted. The record is absolutely silent as to the time in October, 1923, it was written. It is silent as to the purpose of placing these words on the instrument, and the absence of some such expression as "dated" increases the uncertainty. It is true the evidence shows Mrs. Street did not die until 1924 and the record is also silent as to any subsequent act on her part indicating an intent to change the disposition of her property and so it may be argued that no one is injured. However if the absence of the month, though the year be given, be fatal, even when the testator is shown to have survived that year and where the practically unanimous rule is that the date and the month and the year must be given, it is not the province of the court to alter legislative fiat.

But even if executed according to law, the document falls far short of being a will. This document was signed by the decedent. We are to determine whether it is a will. It will be noted there is nothing in the instrument itself which contains language of testamentary disposition. A "paper must show a testamentary intent." 1 Schouler, Wills, 6th ed. 500. There must be language contained therein showing the alleged testator gave or bequeathed or devised property. These words need not be used, or if used need not be used in their strict legal meaning, but some words must be used to show a testamentary purpose. In such cases as Re Morgan, 200 Cal. 400, 253 Pac. 703; Re England, 85 Cal. App. 486, 259 Pac. 956, and similar cases we find expressions showing the testator gave certain property or that it is her will, such as "I, Inez Morgan hereby will," or "Last will of Anna England" and "after all expenses are settled the rest to be divided, etc.;" or the notation "The will of Ellen E. Polands, I made this my will and testament," as found Re Poland, 137 La. 219, 68 So. 415; or such terms as "This $2000.00 for your own use should I die suddenly," as found in Fosselmen v. Elder, 98 Pa. S. 159, construed as a codicil to an existing will. This document simply says: "Money in bank to

be disposed of" and "Donald Montague $2000.00 and Donald the ranch." It does not say they are given, it says they are to be disposed of, that is—sometime in the future. The instrument must show the intent of the testator to give. The instrument has all the ear marks of a mere memorandum.

As we have already shown the opinion in the prior suit (56 N. D. 152, 217 N. W. 150) says the expressions and directions of this memorandum "are appropriate to a testamentary disposition, rather than to a trust." We did not say they were sufficient, and we had under consideration at the time, the claim that this same document created a trust or was a gift. In such case it was proper to consider the declarations made; being competent for such purpose because admittedly against her interest, but incompetent to consider under the claim of will. The decedent may have made notation so that she could draw a will, having drawn one before, or thought this was sufficient to make a will. We are not in position to say which and the instrument does not show. Certainly the words fall far short of showing intent to dispose of her property after her death, which is the purpose of a will. One of the best tests as to the validity of this document as a will, would be its effect in case the decedent had executed a will subsequent to her marriage. If we assume she had executed such an instrument, with all the formalities required by law, and the witnesses had testified to the execution, and her and their signatures, and then this document were presented afterwards to show that by means of this paper she had revoked the will which she had executed, could any one say that this instrument was a revocation? Could any one say that this was indeed a subsequent will? How can we tell but what this is a mere memorandum, wherein the decedent intended each person named therein could dispose of the amount of money set opposite his name in any way he saw fit; or is there anything in the instrument which disproves that these are the amounts of money which she had received from each of these persons on debts owed her, and she intended to dispose of these amounts; or these are sums to be collected from each and to be disposed of when she collects them; or is there anything in the document itself which disproves that it was a mere memorandum indicating how she intended to have a will drawn? The instrument itself does not tell us. It must be remembered she had already drawn a will, but this was

revoked by her marriage. Is this a memorandum indicating how she intended to have a lawyer draw another will for her? We .cannot take her declarations, offered by these witnesses. These declarations are incompetent. To admit such declarations to supply an element that is lacking would be in effect to say that a will may rest in parol, whereas the statutes require it to be in writing.

In Miller v. Travers, 8 Bing. 244, 131 Eng. Reprint, 395, such an attempt is stated to be "calling in extrinsic evidence to introduce into the will an intention not apparent upon the face of the will. . . . It is making the will speak upon a subject on which it is altogether silent, and is the same in effect as the filling up of a blank which the testator might have left in his will. It amounts in short, by the admission of parol evidence to the making of a new devise for the testator, which he is supposed to have omitted." In Patch v. White, 117 U. S. 210, 29 L. ed. 860, 6 S. Ct. 617, 710, the court quotes with approval from 1 Jarman, Wills, 4th and 5th ed. 409, to the effect that the law of wills cannot "permit parol evidence to be adduced either to contradict, add to, or explain the contents of such will."

In Doe ex dem. Hiscocks v. Hiscocks, 5 Mees. & W. 363, 151 Eng. Reprint, 154, the court says: "It appears to us that, in all other cases, parol evidence of what was the testator's intention ought to be excluded, upon this plain ground that his will ought to be made in writing; and if his intention can not be made to appear by the writing, explained by circumstances, there is no will." The term "other cases" was used after the court had shown that it could be "explained by circumstances" when the names of persons mentioned in the instrument required explanation, or when it was necessary to explain the meaning of words in the will to "supply some deficiency, or remove some obscurity, or to give more effect to expressions that are unmeaning or ambiguous."

Good faith wills should be upheld, but in this case we must determine whether it is a will. This means a will as defined by the statute in accordance with statutory forms and regulations, including a testamentary disposition of the property. It must be recalled that this document does not pretend to dispose of all of the property of the decedent. It is admitted it is but a partial disposition. To uphold this as a will we must assume that testatrix executed a holographic will disposing

of only a part of her property, intending to leave the remainder of her property undisposed of to be distributed to her heirs at law in accordance with the statutory provisions.

The instrument not being executed in accordance with the statute it cannot be admitted to probate as a will. In addition thereto there is nothing in the instrument itself which shows it to be a will and the disposition of her property. For these reasons the judgment and order of the district court are reversed.

BIRDZELL and CHRISTIANSON, JJ., concur.

BURKE, Ch. J. (dissenting). This is an appeal from a judgment of the district court of Stark county, affirming the judgment of the county court in admitting a document to probate as the holographic will of Mary McGillivray Street, which is as follows, to wit:

"Money in Bank to be Disposed of:

| | |
|---|---:|
| H. E. Montague | $10,000.00 |
| Maria Wheat | 10,000.00 |
| Willetta McGlashan | 3,000.00 |
| Marion McGlashan | 3,000.00 |
| William Wheat | 2,000.00 |
| Charles Wheat | 2,000.00 |
| Fred Wheat | 2,000.00 |
| Watson Wheat | 2,000.00 |
| Florence Griffith | 2,000.00 |
| Mary Jane Griffith | 1,500.00 |
| Richard Griffith Jr. | 1,000.00 |
| Norman Montague | 3,000.00 |
| Richard Montague | 2,000.00 |
| Hamilton Montague | 2,000.00 |
| Mary Currier | 1,000.00 |
| Donald Montague | 2,000.00 |

and Donald the ranch.

"Mary J. McGillivray Street
"Oct. 1923."

Envelope: (in which document was found) addressed:
"For F. H. Johnson and Claude Montague."

This document is entirely in the handwriting of Mary McGillivray Street, and it is conceded that she was competent to make a will. She was an old woman seventy-five years of age at the time of her death, and the beneficiaries named in the purported will are her sister, her nephews, and her nieces. She died on July 22, 1924, and there was found in her safety deposit box in the First National Bank of Dickinson, North Dakota, the foregoing document together with certificates of deposit for $48,500 payable to the order of self or H. E. Montague. In 1915, Mary McGillivray Street, then Mary McGillivray, made a will and the beneficiaries of said will, which was rendered invalid by her subsequent marriage in 1922, are the beneficiaries in the purported holographic will.

While in Dickinson in the summer of 1923, H. E. Montague was told by Mrs. McGillivray Street, "That if anything happened to her, he would be notified, and to come up here and to open her safety deposit box and he would find there the disposition of the property or the money."

The purported holographic will was found in an envelope in Mrs. Street's safety deposit box, addressed to R. H. Johnson and Claude Montague. R. H. Johnson was the vice president of the First National Bank of Dickinson, and the bank official who made the certificates of deposit at Mrs. Street's request, payable to the order of self or H. E. Montague, and Claude Montague is the H. E. Montague to whom the certificates of deposit were made payable. In a conversation with her niece, Mrs. McGlashan, in 1923, Mrs. Street told Mrs. McGlashan how to make a holographic will, and that she herself had everything fixed.

It is the contention of the appellant that the document is not testamentary in form or in substance, and that the same is not entirely dated as required by the statute. Appellant relies upon the decisions of California and Louisiana and in brief and oral argument insists that we took our statute relating to holographic wills from California; that California took it from Louisiana; that Louisiana took it from the Code Napoleon and that we are bound by the decisions of California and Louisiana. The provision relating to holographic wills appears for the first time in our code as § 691, Revised Codes, 1877, and has been retained without change until the present date. There is noth-

648

ing in the law to show where it was taken from, and nothing to justify the statement that it was taken from California, except, that the language is the same. It is not the same, however, as the language in the Louisiana statute, and if its origin was in the Louisiana statute, or the Code Napoleon, it was very materially amended. The Louisiana Statute reads (Merrick's Revised Code of Louisiana, 2d ed. § 1588): "A holographic testament is that which is written by the testator himself. *In order to be valid,* it must be entirely written, dated and signed by the hand of the testator. It is subject to no other form, and may be made anywhere, even out of the state." The Louisiana Statute says: *"In order to be valid it must be."* In our statute, the language *"In order to be valid it must be"* is stricken out and the statute simply states, "A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form and may be made in and out of this territory *and need not be witnessed."* If it was taken from the Louisiana statute there was some reason for striking out this provision, *"In order to be valid it must be,"* and adding, "and need not be witnessed." The Louisiana statute must have been considered too drastic, otherwise the entire language of the Louisiana code would have been adopted by the legislature. The rule invoked by the appellant that we are bound by the decisions of California and Louisiana does not apply in this state, for the reason, that under § 7321, Comp. Laws 1913, "The code establishes the law of this state respecting the subject to which it relates, and its provisions and all proceedings under it are to be liberally construed with a view to effect its objects and to promote justice."

There was but one decision in California relating to holographic wills prior to the adoption of the 1877 Code in the territory of Dakota, viz., Clarke v. Ransom, 50 Cal. 595. The question involved in this case is whether the will was testamentary in character and the decision is a very liberal one in its construction. The will is as follows:

"Mayfield Grange, Tuesday, June 23, 1874.

"Dear Old Nance:

"I wish to give you my watch, two shawls, and also five thousand dollars.

"Your old friend,
"E. A. Gordon."

The court said: "On its face there is nothing to indicate that it was intended to be testamentary. . . . The instrument on its face simply expresses a desire, or at most an intention on the part of Mrs. Gordon, to give to the person designated as 'Dear Old Nance' the watch and shawls, together with $5,000. It clearly appears, however, from the testimony, . . . that Miss Ransom is the person designated as 'Dear Old Nance.' It is well settled in this country and in England, first, that in determining whether the instrument propounded was intended to be testamentary, reference will be had to the surrounding circumstances, and the language will be construed in the light of these circumstances. Second, that if it shall appear under all the circum- stances that the instrument was intended to be testamentary, the court will give effect to the intention, if it can be done consistently with the language of the instrument. . . ." Citing 1 Jarman, Wills, 363; 1 Redf. Wills, 174, 175; Outlaw v. Hurdle, 46 N. C. (1 Jones, L.) 151; Ehrenberg's Succession, 21 La. Ann. 280, 99 Am. Dec. 729; Jones v. Nicolay, 2 Rob. Eccl. Rep. 288, 163 Eng. Reprint, 1320; Re Todd, 2 Watts & S. 145; Maxwell v. Maxwell, 3 Met. 100; Robnett v. Ash- lock, 49 Mo. 172; 1 Williams, Exrs. 90; Wootton v. Redd, 12 Gratt. 205; McGrath v. Reynolds, 116 Mass. 566.

In this case oral testimony was admitted to show surrounding cir- cumstances and it showed the testamentary character of the will and that the person designated as "Dear Old Nance" was a certain Miss Ransom. So too, in the case at bar, it appears in the testimony that prior to Mrs. Street's marriage to Mr. Street she had a will, made about 1915, and the beneficiaries in that will, which was rendered invalid by her subsequent marriage to Mr. Street, are the beneficiaries in the document offered for probate as a will in the instant case. The testi- mony shows that she went to Claude Montague before she came back to Dickinson, and told him that if anything happened to her, he was to go to the First National Bank in Dickinson, open her box, and he would there find authority for the disposal of her property. The evidence further shows, that the money provided for in the document was in certificates of deposit that were made payable to Mrs. Street or to H. E. Montague and found in the safety deposit box with the purported will, and it is undisputed that the beneficiary named as "Donald," who was to have the ranch, was the Donald Montague and that there was

but one ranch consisting of 160 acres in Stark County. The document was found in a sealed envelope addressed in Mrs. Street's handwriting "For R. H. Johnson and Claude Montague." If it was simply a memorandum for Mrs. Street's benefit, why did she place it in an envelope addressed to Johnson and Montague? Mrs. Street did not need a memorandum, she knew what she wanted to do with her property, and to whom she wanted to give it. She had absolute control over the safety deposit box while she lived, and the inference that she placed the envelope with the document enclosed in the safety deposit box addressed to R. H. Johnson who made, at her request, the certificates of deposit payable to self, or H. E. Montague, and to Claude Montague, the H. E. Montague to whom the certificates were made payable, intending the document as a disposition of the money in the bank and the ranch at her death is irresistible. The document begins "Money in bank to be disposed of." When is it to be disposed of? It is disposed of when Mrs. Street dies, and the envelope with the document enclosed is delivered to R. H. Johnson and Claude Montague. After the statement "Money in bank to be disposed of" there follows the names of the beneficiaries with the amount each is to have, set opposite the name. It winds up with "the ranch to Donald." Clearly meaning that the ranch was to be Donald's. There is no question but what the wording of the document taken in connection with Mrs. Street's extreme age, and all the surrounding circumstances shows that the document is testamentary, and was intended by the testator as a holographic will.

In the recent case of Thrift Trust Co. v. White, — Ind. App. —, 167 N. E. 141, the Indiana court said: "Good faith wills are solemn instruments not to be set aside because of mere irregularities as to form, but should be upheld when it is possible within the law to do so." In this Indiana case the will was entirely in the handwriting of the testatrix beginning with the words, "The will of Bell Stockman" but not signed by the testatrix in another place. Oral evidence was admitted to prove that she intended to adopt her name as written in the beginning of the will as her signature, and it was held to be sufficient under statute providing that wills must be in writing and signed by the testator.

In Re Thomas, 243 Mich. 566, 220 N. W. 764, the exact question

was before the court, the heading of the will being: "The will of Augusta M. Thomas" the name of the testator not appearing elsewhere upon the will, and the will was held valid.

To the same effect in Stone v. Holden, 221 Mich. 430, 29 A.L.R. 884, 191 N. W. 238; Meads v. Earle, 205 Mass. 553, 29 L.R.A. (N.S.) 63, 91 N. E. 916; Armstrong v. Walton, 105 Miss. 337, 46 L.R.A.(N.S.) 552, 62 So. 173, Ann. Cas. 1916E, 137; Kolowski v. Fausz, 103 Ill. App. 528; Ex parte Cardozo, 135 Md. 407, 109 Atl. 93; Lawson v. Dawson, 21 Tex. Civ. App. 361, 53 S. W. 64; Adams v. Field, 21 Vt. 256.

In Re Aird, Rap. Jud. Quebec 28 C. S. 235, wherein it is held, that a holographic will written in typewriting is valid.

In Re Jenkins, 157 N. C. 435, 37 L.R.A.(N.S.) 842, 72 S. E. 1072, the court said: "The provisions of a statute are, of course, mandatory and not directory, and therefore there must be a strict compliance with them before there can be a valid execution and probate of a holographic script as a will; but this does not mean that the construction of the statute should be so rigid and binding as to defeat its clearly expressed purpose. It may be construed and enforced strictly, but at the same time reasonably."

In the case of Fosselman v. Elder, 98 Pa. 159, on the back of an envelope there was written in the testator's handwriting, "Dear Bella, this is for you to open." In the envelope was found a two thousand dollar note, and the following writing in testator's hand, "Lewiston, October 2, 1879, my wish is, for you to draw this two thousand dollars for your own use should I die suddenly. Elizabeth Fosselmen." The writing inside was not sufficiently definite, and the court allowed the probate of the envelope as a part of the will. The court said, "It is not even essential to its validity that the different parts should be physically united. It is sufficient if they are connected by their internal sense, or by a coherence and adaptation of parts."

In Re Thompson, 196 N. C. 271, 62 A.L.R. 288, 145 S. E. 393, the North Carolina court held, that: "Note found in the same lock box as holders holographic will with notation on back in his handwriting, 'I assign thee with note over to my wife . . . at my death,' held a valid codicil" to the will.

In Re Skerrett, 67 Cal. 585, 8 Pac. 181, there were two instruments

in the handwriting of the deceased, attached together, and found among his papers, one being in the form of a letter signed by him and addressed to his sister, and the other purporting to be a copy of a deed of gift from the former to the latter, and it appearing on the face of the letter that the property described in the deed was intended by the deceased as a provision for the sister after his death. The court said:

"Neither the copy of the deed nor the letter, taken by itself, constitute a will; the one is not testamentary in its character, the other has no date; but taking them together as the deceased left them, forming one document, it is complete. The first furnishes the date, and the latter the testamentary character."

In other words, the deed which was dated was not a will because it was not testamentary in character and form, and the letter was not a will because it was not dated, and the court generously added them together and the sum total was a will.

In the case of Re Soher, 78 Cal. 482, 21 Pac. 8, the court in discussing the case of Re Skerrett, 67 Cal. 585, 8 Pac. 181, supra, said: "And we think that the rule is a sound and salutary one. If testators are to be encouraged by a statute like ours to draw their own wills, the courts should not adopt, upon purely technical reasoning, a construction which would result in invalidating such wills in half the cases."

In Re Soher, 78 Cal. 477, 21 Pac. 8, Soher made a will drawn by another in which his son, Adolph, was named as the beneficiary. Thereafter he made a codicil to the will in his own handwriting in which he says: ". . . I hereby affirm the foregoing will, except in the ninth article of bequests, where Adolph is included with my wife and other children, which bequest to Adolph I hereby revoke." It was dated and signed. By this codicil the testator attempted to make over a will which had not been written in his handwriting, reaffirming parts of it and revoking parts of it. The court said:

"But as has been said in other connections, it is not true as a matter of physical fact that the two documents are one and the same. The law for some purposes—mainly of construction—regards one as a part of the other. But this fiction ought not to be extended to absurd or unjust consequences." Will held valid.

In Re Morgan, 200 Cal. 400, 253 Pac. 703, the California court held that a "holograph will beginning 'Last will and testament of

Ynez Morgan,' and stating, 'I, Ynez Morgan hereby will,' but not signed at end of instrument, *held* to show on face as whole, that it was a complete and executed instrument." This case is followed in the case of Re England, 85 Cal. App. 486, 259 Pac. 956, where the will is headed, Last will of Anna England: then follows a disposition of the property which does not conclude with a period and though unsigned, was held to be a valid holographic will.

In Re Henderson, 196 Cal. 623, 238 Pac. 938, the California court having under consideration a codicil to a holographic will signed, "From a loving Mother," said:

"The subscription to the second paragraph, 'Your loving mother,' if a material consideration here, is a sufficient signature. Ex parte Walker, 15 Quebec Pr. Rep. 15, also entitled 'Rapport's de Practique de Quebec,' 15: Kimmel's Estate, 278 Pa. 435, 31 A.L.R. 678, 123 Atl. 405; Wells v. Lewis, 190 Ky. 626, 228 S. W. 3; Page, Wills, § 170."

The only state not in harmony with the decisions quoted is, the state of Louisiana, as shown by the following decisions. Re Poland, 137 La. 219, 68 So. 415, the court said: "Where testatrix left an unsigned holographic will enclosed in an envelope bearing the superscription, 'The Will of Ellen E. Polands' such superscription did not constitute a valid signature to the will, although in the handwriting of the testatrix." It was all in the handwriting of the testatrix, and began, "The will of Ellen E. Polands, I made this my will and testament." In this case the name not only appeared on the envelope, but the will began with the name in the same way that many of the wills in the cases cited above began. The court then quotes from a French authority as follows: "The signature of the testator may be considered as the sealing of the testament, which up to the performance of that formality remains but a simple project. It is the signature alone which attests that the testament was really written and dated by the hand of the testator. The signature is an essential formality to constitute a holographic testament, and it would be impossible to conceive of anyone demanding the execution of last wishes written and signed but not signed by their author."

In Fuzier-Herman, Code Civil Annote art. 970 No. 149, it is said: "No fact, however, probative in itself could supply the defect resulting from the absence of the signature to the testamentary act itself. Thus

a testament which is not signed, is null though it be enclosed in an envelope on which the date of the testament and the signature of the testator are superscribed and affixed."

In the case of Armant's Succession, 43 La. Ann. 310, 26 Am. St. Rep. 183, 9 So. 50, the court said: "the article 1588 (being the statute relating to holographic wills) was copied into our code from article 970 of the French Code which in turn had been taken from an ordinance of Louis XV, prescribing the forms of holographic testament. Prior and subsequent to the Code Napoleon the jurisprudence of France had been uniform to the effect that the signature must be at the end of the testament or at least that no disposition following the signature can have effect. This jurisprudence was extant and well established when in 1825, the articles of the French Code were copied into our own. We think it to be a fair presumption that the framers of our code, familiar with the interpretation of the same language, both prior to and subsequent to the Napoleon Code, must have intended and expected that our own article should receive the same interpretation, particularly to the word signature as well as to the definitions thereof in all standard dictionaries." The authorities cited and relied upon are all French authorities, and the opinion does not mention an American decision.

In Dyer's Succession, 155 La. 265, 99 So. 214, the will was dated, signed and sealed, entirely in the handwriting of the testator, but after and below the signature on the same sheet of paper the testator added a codicil in his own handwriting. The codicil which was not signed was held invalid, the court citing only French and Louisiana authorities. Under the many authorities cited in this opinion the codicil would have been held a part of the will which was signed.

The subject of holographic wills is reviewed at great length in the case of Zerega v. Percival, 46 La. Ann. 590, 15 So. 476. The authorities cited in the briefs of the case, and the authorities cited by the court have simply followed and relied on the rule that the state court is bound by the French decisions which had become the settled law of France before the adoption of the law in Louisiana. As late as July 22, 1928, in the case of Walsh's Succession, 166 La. 695, 117 So. 777, the Louisiana court quoted from Laurent, Droit Civil Francais 13, p. 192; as follows: "It is the essence of a holographic will that it be en-

tirely written, dated, and signed by the hand. of the testator; that is to say, that it be his work exclusively; as soon as the hand of a third party is shown it is vitiated; that is the text and spirit of the law. The court of Bourges has thus judged it. There were in the testament attacked, commas, accents, two s's, and six indications of references which were not in the hand of the testator; hence the writing was not entirely in her hand which nullifies it. It was opposed that the corrections made by the third party added nothing to the disposition. Nevertheless, said the decree, it is none the less true that the interpolations have been made with the consent of the testator, a third party co-operating to the writing of the testator, which vitiated it and rendered it null." With the statement of the law as quoted the Louisiana court said: "We are in strict accord."

Under the Louisiana decisions no part of the will can be written below the signature. In the case of Dyer's Succession, 155 La. 265, 99 So. 214, supra, the will ended with the statement, "I make this my last will and testament, dated, signed and sealed by me." It was signed on the line below, after which the testatrix skipped two lines, and then on the same sheet of paper she named executors and disposed of the residue of her property all in one document, dated and signed, and yet the court held, that only, that portion which preceded the signature could be probated as a will. The signature is of greater importance in Louisiana apparently than the date, for it is held in the case of Fugua's Succession, 27 La. Ann. 271, and Zerega v. Percival, 46 La. Ann. 605, 15 So. 476, that the date may be placed below the signature.

We have shown that the decisions of Louisiana construing holographic wills are not in harmony with the courts generally of the United States, nor of Quebec, but some of our courts have followed the Louisiana decisions on the question of date. The latest case on this question is the case, Re Hail, 106 Okla. 124, 235 Pac. 916. This case is exactly in point with the case at bar, and Oklahoma has the same statute. The will is dated November, 1919. In the case at bar, the will is dated October, 1923. The Oklahoma court considers the following provisions of the Oklahoma statute, viz.: Section 11,230 defining a holographic will; section 11264. "A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent it must have effect as far as possible." Section 11273. "Of

the two modes of interpreting a will that is to be preferred which will prevent a total intestacy." Section 11295: "A condition precedent in a will is to be deemed performed when the testator's intention has been substantially though not literally complied with." The court states that the foregoing sections "are taken from Dakota Territory." The statutes quoted are respectively §§ 5648, 5685, 5694 and 5716, North Dakota Comp. Laws 1913. In this case our statutes are construed, and a holographic will dated November, 1919, is held to be a substantial compliance with the statute and a valid holographic will. There is no other case like the instant case, except, in the state of Louisiana.

The California court in the case of Re Price, 14 Cal. App. 462, 112 Pac. 482, had before it a will which read, "Dated this — day of —— 1906." In this case neither the day of the month, nor the month is given, and the court held the date insufficient. Citing Heffner v. Heffner, 48 La. Ann. 1088, 20 So. 281; Robertson's Succession, 49 La. Ann. 868, 62 Am. St. Rep. 672, 21 So. 586; Fuentes v. Gains, 25 La. Ann. 85, quoting at length therefrom. The syllabus in the case of Heffner v. Heffner, 48 La. Ann. 1088, 20 So. 281, supra, is as follows: "The requirements of the code that the holographic will shall be dated, requires that the day of the month shall be stated; the day is part of the date, and the month and year without the day of the month, avoids the holographic will. Civil Code, art. 1588; Code Napoleon, art. 970; 4 Boilleux, 91; 3 Troplong, ¶ 1479; Coin Delisle, pages 151–542. Lagrave v. Merle, 5 La. Ann. 278, 52 Am. Dec. 589; Fuentes v. Gains, 25 La. Ann. pp. 85–107."

In the opinion the court said: "But the necessity of the day of the month in the date of the holographic testament is rigidly enforced by the jurisprudence under the Napoleon Code." Citing French and Louisiana cases.

In 1911, the California court had before it a holographic will dated 4-14-07. It was contended that the date was insufficient. At that time the question had not been decided by Louisiana, and the California court held, that the date was sufficient and would be construed as meaning April 14, 1907. The same question came before the Louisiana Court October 14, 1919, in Beird's Succession, 145 La. 755, 6 A.L.R. 1452, 82 So. 881. In this case the date was 9-8-18, and the Louisiana court ignoring and never mentioning the California decision, held, that

the date was insufficient, and that the will must show on its face, the day, the month, year and century when it was executed. Citing and relying on Heffner v. Heffner, 48 La. Ann. 1088, 20 So. 281, supra, and Robertson's Succession, 49 La. Ann. 868, 21 So. 586, supra.

In Re Fay, 145 Cal. 82, 104 Am. St. Rep. 17, 78 Pac. 340, the court said: "The instrument was entirely in the handwriting of deceased, and bore date 'May twenty-fifth, eighteen hundred and fifty-nine.' It is not claimed that the deceased was not of sound mind, nor that the purported will was not his free act and deed."

But it was claimed that there was a mistake made in the date. The court stated: "The legislature has not used the words 'truly dated' nor 'correctly dated' but the word 'dated,' which must be construed according to the approved usage of the language. . . . The word 'date' or 'dated' is often used as referring to the date or time written in an instrument; thus it is provided in our code that any date may be inserted in a negotiable instrument, whether past, present, or future. . . . The date is not a material thing, although made necessary by the statute. It is a means of identification, and aids in determining the authenticity of the will; but the main and essential thing is, *that the will be wholly written and signed by the hand of the testator.* . . ."

In Re Lakemeyer, 135 Cal. 28, 87 Am. St. Rep. 96, 66 Pac. 961: "A holographic will was headed: 'New York, Nov. 22, '97,' and it was held that the will was dated, the abbreviation '97' meaning 1897. Therefore, it appears to be the rule of this court, as of all other courts, to construe wills as valid in preference to holding them void."

In a long note to this case, 104 Am. St. Rep., the Compiler in reviewing the case of Re Fay, 145 Cal. 82, 78 Pac. 340, supra, and Re Clisby, 145 Cal. 407, 104 Am. St. Rep. 58, 78 Pac. 964, supra, as pointed out in the memorandum opinion of the trial judge, states: "We must confess that the reasoning upon which these decisions are based goes far towards establishing that the requirement of dating is directory rather than mandatory." It is clearly held in this Fay Case that the date is not material and while the statute requires it, it may be any date like the date on a promissory note, or other instrument, and while the will was dated in 1859, by mistake instead of 1889, the date was sufficient and the will valid.

In Re Francis, 191 Cal. 600, 217 Pac. 746, it is held, that a

date in the handwriting of the testator as follows: "10–22–19" was insufficient, for the reason, that it was made upon paper where the date was partly printed, that is, the first two figures of the year 1919, were printed and the last two figures 19 were in the handwriting of testator. The first two figures were not necessary, but being there in print and having been used by the testator as a part of the will, notwithstanding that they were unnecessary and the testator himself used them as a part of the date, the court following the case of Re Thorn, 183 Cal. 512, 192 Pac. 19, held the will invalid. Meyers, Judge, concurring said: "I concur solely, because, I must agree that this case is ruled by the decision in Re Thorn, 183 Cal. 512, 192 Pac. 19, and if a change is to be made in the rule as there announced it should be by legislative enactment." This case and the case of Re Thorn, 183 Cal. 512, 192 Pac. 19, supra, are certainly not in accord with Re Fay, 145 Cal. 82, 104 Am. St. Rep. 17, 78 Pac. 340; Re Lakemeyer, 135 Cal. 28, 87 Am. St. Rep. 96, 66 Pac. 961, and Re Clisby, 145 Cal. 407, 104 Am. St. Rep. 58, 78 Pac. 964, supra.

It is fundamental in the drawing of a holographic will that it be entirely the work of the testator. The reason, since it need not be witnessed, is clearly for the purpose of reflecting the will of the testator without the influence of others.

In Re Thorn, 183 Cal. 512, 192 Pac. 19, the testator willed his country place known as "Cragthorn Park" to a certain society. The will was wholly in the handwriting of the testator, except, that the testator stamped in the name "Cragthorn Park," with a rubber stamp and with his own hand, instead of writing it in his own handwriting. An analysis of the two cases leads to the conclusion that the case of Re Francis, was decided on the ground of stare decisis.

In Re Bernard, 197 Cal. 36, 239 Pac. 404, the holographic will under consideration begins as follows:

"The following 4 sheets of paper included, Long Beach, California, Oct. 12, 1918. 'I, Josephine Bernard of the City and County of Denver, Colo. do hereby declare this to be my last will and testament.' "

The will then continued on four sheets of paper, and was unsigned. The will was held invalid, first for want of a signature, second, for the reason that the words "Long Beach, California," were printed, and not written in the handwriting of the testator.

In Re Oldham, 203 Cal. 618, 265 Pac. 183, the testator used his own stationary upon which were printed his name, the building in which his office was located, followed by the words Los Angeles, California. After the words "Los Angeles, California," the testator wrote the date the document was to bear, and then proceeded to write his will in his own handwriting. This was held to be a valid will.

The last case before the California court decided December 15, 1928, is the case of Re De Caccia, 205 Cal. 719, 61 A.L.R. 393, 273 Pac. 552, the will began as follows: "Of good sound Mind and God

Oakland, California, Febr. 14th, 27.

I make my Will I feel that I haven't many more years to live on this earth."

The will then continues all in the handwriting of the testator, except, the printed words, *Oakland, California*. The court said: "The instrument now before us resembles in many respects that held to be a valid holographic will in Re Oldham. The date follows the printed words appearing upon the instrument. It is contended by respondents, that the deceased used scrupulous care to write the date 'Febr. 14th 27' on the same line and as close as possible to the printed words, 'Oakland, California,' and thus manifested a clear intention to connect the print-ed words in the instrument with the date of its execution. . . . In the Oldham will the date was so nearly in line with the words 'Los Angeles, California,' that in deciding that case we referred to them as 'being followed by the date written approximately on the same line.' We do not believe that this slight difference in the two instruments in this respect would justify a decision in one upholding it as a legal in-strument and in the other a decision declaring it invalid." The court then proceeded to distinguish "Re Bernard" case, which was held invalid, from the case "Re Oldham" and "Re De Caccia." The other cases "Re Rand," 61 Cal. 468, 44 Am. Rep. 555; "Re Billing," "Re Soher," "Re Thorn" and "Re Francis" are mentioned, but are not dis-tinguished, discussed, nor cited as authority.

The late decisions indicate that California has adopted the liberal, reasonable rule of construing holographic wills.

According to the great weight of authority it seems clear that a good faith will will not be set aside because of mere irregularities as to form, but should be upheld when it is possible within the law to do so,

as in Ex parte Walker, 15 Quebec, Pr. Rep. 15, where a holographic will was signed "Mother." And in Re Kimmel, 278 Pa. 435, 31 A.L.R. 678, 123 Atl. 405, where a holographic will was signed, "Father." And in the case of Wells v. Lewis, 190 Ky. 626, 228 S. W. 3, where a holographic will was signed "Ant nanie," and was held valid, and entitled to probate as the will of "Aunt Nannie Rogers." And the many other cases cited in this opinion, where the name appeared only in the exordium of the will, or on the envelope in which the will was enclosed. The statute requiring that the will be entirely written, dated and signed by the hand of the testator himself, means that the testator's name shall be signed to the will. Father or Mother is not a usual or customary signature. The signature is for the purpose of identifying the testator, and is proof of intention to make it a will, and if it is written by a father to his children and signed Father; or a mother to her children and signed Mother; or an Aunt to her nieces or nephews and signed Aunt, the identification and proof is as good, if not better, than it would be if they had actually signed their names to it, and since the reason for the rule ceases the rule itself ceases and the signature is sufficient.

The date of the will in the instant case is necessary only for the purpose of showing that it was made subsequent to the marriage of testatrix to Mr. Street. It is conceded, that the will is all in the handwriting of the testatrix; that she was competent to make a will; that she made this will in October, 1923; that there is no other will as late as October, 1923; and since the will was executed in October, 1923, and the marriage of testatrix was in 1922, the date of the will proves conclusively that the will was executed after the marriage.

Section 7321, Comp. Laws 1913, is as follows: "The code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed with a view to effect its objects and to promote justice."

Under this section the substantive law as set forth in the statute must be liberally construed and the practice and proceedings for the enforcement of the law or for the protection of any right thereunder must be liberally construed.

Section 5648, Comp. Laws 1913, establishes the law of this state relating to holographic wills and therefore the law of holographic wills

as established by the code and the procedure for the probate thereof must be liberally construed.

Section 5648, Comp. Laws 1913, does not say as does the statute of Louisiana, "That in order to be valid a holographic will must be" so and so, it simply says, "A holographic will is one written, dated and signed by the testator himself." In the instant case the will was wholly written, dated, and signed by the testatrix. It is dated "Oct. 1923," and as there is no other will of a later date than 1915, and the testatrix was competent to make a will, the date in this case is sufficient.

Under § 5694, Comp. Laws 1913, "Of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy."

Attention is called by appellant to the closing language of the opinion in the case of Re Hail, 106 Okla. 124, 235 Pac. 916, which reads as follows:

"We are constrained to hold that Oklahoma is inclined to the liberal construction or substantial compliance rule, and applying these rules to the record in this case, and the will here involved, we hold that the date 'November, 1919,' is a substantial compliance with the statute. It is not intended, however, by this decision to announce the conclusion here reached as a rule by which to measure the sufficiency of the date or signature of any other holographic will than the one here involved. The construction to be placed upon our statute governing this class of wills is left open for determination wherever its construction is more imperatively demanded by the facts of some particular case, and, this being the only objection made on this appeal to the validity of the purported will of John D. Hail, the judgment of the district court admitting said will to probate was right and its judgment should be in all things affirmed."

It is claimed that this language indicates that this decision is not authority in any other case. The reason for this statement in the decision is clear. There might be a case where a will offered for probate is dated in the same manner, and another will might be presented of a later date. This decision in such case, of course, would not be authority, or it might be that the decedent was perfectly sane on the first day of November, but insane at other times during the month so there might be a question of competency involved.

In the Oklahoma case there was no question of competency or of any

other will. In the instant case, there is no question of competency, no question of any other will, no question about the property, or that it belonged to Mrs. Street, and was hers to will to whom she pleased. It is all admitted, but because, forsooth she did not include the day of the month in the date, her will is nought, and the property she guarded and preserved so well, goes where it was not intended to go. The statute does not say that the date shall include the day of the month. It simply says, "A holographic will is one that is entirely written, dated and signed by the hand of the testator himself." In the instant case the will is entirely written, dated and signed by the hand of the testatrix. The absence of the day of the month from the date injures no one in this case and is entirely immaterial. The state through its law making power may regulate the making of wills, but it is not jealous of this power. It recognizes as fundamental the principle that laws are made for the people and the promotion of their general welfare. Its supreme obligation and greatest concern, is the enactment and enforcement of legislation that will enable us to live in safety, to acquire property honestly, to protect our property against the encroachments of wrong and to make it simple and easy to dispose of as we wish before we die. The judgment of the District Court and the County Court should be affirmed.

NUESSLE, J. (dissenting). I am unable to agree with the majority opinion. Reasonably construing and applying the statute, § 5648, Comp. Laws 1913, the writing here involved meets its requirements and constitutes a holographic will. The majority opinion says that the writing is lacking a sufficient date. I cannot agree. October, 1923, is a date. Judge Burke in his dissent has cited a great number of cases touching this question and I will not burden the record by a further reference to authorities.

I think further that the writing expresses Mrs. Street's testamentary purpose. Considering the instrument in the light of those circumstances which are competent to be considered, it is clear that she intended by it to dispose of her property therein described, such disposition to take effect after her death. That the writing is inartistic and informal is beside the question since her testamentary intent thus appears. See Noble v. Fickes, 230 Ill. 594, 13 L.R.A.(N.S.) 1203, 82 N. E. 950,

12 Ann. Cas. 282; Clay v. Layton, 134 Mich. 317, 96 N. W. 458; Ferris v. Neville, 89 Am. St. Rep. 480, and note (127 Mich. 444, 54 L.R.A. 464, 86 N. W. 960); Underhill, Wills, § 37, et seq.

The judgment of the district court should be affirmed.